# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WEST LOOP CHIROPRACTIC | ) | |
| & SPORTS INJURY CENTER, LTD., | ) | |
| and WEST LOOP HEALTH & SPORTS | ) | |
| PERFORMANCE CENTER, LLC, | ) | |
| on behalf of plaintiffs and | ) | |
| the class members defined herein, | ) | |
| | ) | 16 C 5856 |
| Plaintiffs, | ) | |
| | ) | Judge Guzman |
| v. | ) | Magistrate Judge Gilbert |
| | ) | |
| NORTH AMERICAN BANCARD, LLC, | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT NORTH AMERICAN BANCARD, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I. Introduction ....................................................................................................1

II. Background ...................................................................................................3

III. Argument ....................................................................................................9

    A. Opt-Out Notice is Not Required On Solicited Advertisements ....................10

    B. Plaintiffs Lack Standing ...........................................................................12

    C. The Class Is Not Definite ..........................................................................14

    D. Plaintiff Cannot Establish The Rule 23(a) Prerequisites .............................19

        1. Numerosity cannot be established ..........................................................19

        2. Commonality cannot be established ........................................................20

        3. Typicality cannot be established .............................................................21

        4. Adequacy cannot be established.............................................................24

    E. Plaintiff Cannot Satisfy Rule 23(b)(3) ........................................................26

        1. Predominance and Superiority cannot be satisfied where individual issues predominate and the case is unmanageable ...........................................26

IV. Conclusion....................................................................................................28

30145545v1

## TABLE OF AUTHORITIES

**Page**

**Cases**

*A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC* ......................................23
No. 12-21695-CIV, WL 3463489 (S.D. Fla. July 3, 2013)

*Amchem Products, Inc. v. Windsor* .............................................................................................24, 25
521 U.S. 591, 117, S.Ct. 2231, 138 L.Ed. 2d 689

*Arreola v. Godinez* .......................................................................................................................10, 19
546 F.3d 788 (7th Cir. 2008)

*Bais Yaakov of Spring Valley v.*
*Federal Communications Commission* ....................................................................... 3, 7, 11, 13
--F.3d--, No. 14-1234, 2017 WL 1192909 (D.C. Cir. March 31, 2017)

*Brodsky v. HumanaDental Insurance Company* ..............................................................................24
No. 1:10-cv-03233, 2016 WL 5476233 (N.D. Ill. Sept. 29, 2016)

*Califano v. Yamasaki* .......................................................................................................................9
442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)

*CE Design Ltd. v. King Architecture Metals, Inc.* .................................................................9, 24
637 F. 3d 721 (7th Cir. 2011)

*Comcast  Corp. v. Behren* ............................................................................................................ 9, 10
--U.S.--. 133 S. Ct. 1426, 185 L.Ed. 515 (2013)

*De La Fuente v. Stokely-Van Camp, Inc.* .......................................................................................21
713 F.2d 225 (7th Cir. 1983)

*Fauley v. C. Specialties, Inc.* .........................................................................................................16
No. 15-cv-5581 (Dkt. 36) (N.D. Ill. Oct. 28, 2015)

*Gene & Gene LLC v. BioPay LLC* ..................................................................................................26
541 F.3d 318 (5th Cir. 2008)

*General Telephone Co. of Southwest v. Falcon* .........................................................................9, 21
457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)

*G.M. Sign, Inc. v. Brink's Mfg. Co.* ...........................................................................................19, 26
No. 09 C 5528 2011, 2011 WL 248511 *4 (N.D. Ill. Jan. 25, 2011)

*Grind Lap Services, Inc. v. UBM LLC* ...........................................................................................17
No. 14 C 6448, 2015 WL 6955484 (N.D. Ill. Nov. 10 2015)

*Hayes v. Wal-Mart Stores, Inc.* .................................................................................. 14, 15
725 F.3d 349 (3d Cir. 2013)

*Hinman v. M and M Rental Center, Inc.* ............................................................... 17
545 F.Supp.2d 802 (N.D. Ill 2008)

*Holtzman v. Turza* .................................................................................................... 23
No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009)

*Jamie S. v. Milwaukee Public Schools* .................................................................. 14
668 F.3d 481 (7th Cir. 2012)

*J.H. Cohn & Co. v. American Appraisal Associates, Inc.* ................................... 22, 24
628 F.2d 994 (7th Cir. 1980)

*Keele v. Wexler* ......................................................................................................... 12
149 F.3d 589 (7th Cir. 1998)

*Kohen v. Pac Inv. Mgmt. Co.* ................................................................................. 22
571 F.3d 672 (7th Cir. 2009)

*Koos v. First National Bank of Peoria* ................................................................. 22
496 F.2d 1162 (7th Cir. 1974)

*Mace v. Van Ru Credit Corp.* .................................................................................. 21
109 F.3d 338 (7th Cir. 1997)

*Messner v. Northshore University Health System* ............................................... 26
669 F.3d 802 (7th Cir. 2012)

*Muro v. Target Corp.* ............................................................................................... 22
580 F.3d 485 (7th Cir. 2000)

*N.B. v. Hamos* ........................................................................................................... 14
26 F.Supp.3d 756 (N.D. Ill. 2014)

*Nack v. Walburg* ....................................................................................................... 10, 11
715 F.3d 680 (8th Cir. 2013)

*Oplchenski v. Parfums Givenchy, Inc.* .................................................................. 19
254 F.R.D. 489 (N.D. Ill. 2008)

*Opp v. Wheaton Van Lines, Inc.* ............................................................................. 14
231 F.3d 1060 (7th Cir. 2000)

iii

*Oshana v. Coca-Cola* .................................................................................... 9, 10, 14, 22
472 F.3d 506 (7th Cir. 2006)

*Physicians Healthsource, Inc. v. Stryker Sales, Corp.* ............................................... 13
65 F.Supp.3d 482 (W.D. Mich. 2014)

*Ramirez v. Palisades Collection LLC* .................................................................... 14
250 F.R.D. 366 (N.D. Ill. 2008)

*Randolph v. Crown Asset Mgmt.* ......................................................................... 26
254 F.R.D. 513 (N.D. Ill. 2008)

*Retired Chicago Police Ass'n v. City of Chicago* ..................................................... 10
7 F.3d 584 (7th Cir. 1993)

*Rosario v. Livaditis* ......................................................................................... 22
963 F.2d 1013 (7th Cir. 1992)

*Schlesinger v. Reservists Committee to Stop the War* ............................................... 12
418 U.S. 208, 94 S.Ct. 2925, 2930 41 L.Ed.2d 706 (1974)

*Thorogood v. Sears Roebuck and Co.* ................................................................... 10
547 F.3d 742 (7th Cir. 2008)

*Uhl v. Thoroughbred Technology and Telecommunications, Inc.* ................................. 24
309 F.3d 978 (7th Cir. 2002)

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.* .................................... 14, 22
274 F.R.D. 229 (S.D. Ill. 2011)

*Wal-Mart Stores, Inc. v. Duke* ......................................................................... 9, 10
564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed. 374 (2011)

*West Loop Chiropractic & Sports Injury Center, Ltd. v.*
*North American Bancard, LLC* ............................................................................ 16
No. 16-cv-5856, 2017 WL 404896 (N.D. Ill. Jan. 30, 2017)

**Statutes and other Authorities**

28 U.S.C § 2342 ................................................................................................ 11

47 U.S.C. § 227 ..................................................................................... 2, 8, 10, 11, 13

47 C.F.R. § 64.1200 ................................................................................... 11, 12, 13

Fed. R. Civ. P. 23 .......................................................................... 9, 19, 21, 24, 25, 26

iv

30145545v1

*In the Matter of Rules and Regulations Implementing
the Telephone Consumer Protection Act of 1991* ....................................................17
21 FCC Rcd. 3787 (Apr. 6, 2006)

*Rules and Regulations Implementing the Telephone
Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005* .................................. 10, 17
71 FR 26967 (May 3, 2006)

Manual for Complex Litigation (Fourth) § 21.222 (2004).........................................................14

Restatement (Third) of Agency §1.01 (2006) ..........................................................................13

30145545v1

Defendant, North American Bancard, LLC ("NAB"), through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Illinois, files this Response in Opposition to Plaintiffs' Amended Motion for Class Certification (Dkt. 98) and Memorandum of Law in support thereof (Dkt. 111) (collectively, the "Motion"), and states as follows:

## I. INTRODUCTION

Plaintiffs' Motion that seeks to turn two Plaintiffs' selected and solicited facsimiles sent to Plaintiffs only upon Plaintiffs' invitation and permission into a basis to assert a nationwide class action fails to survive the applicable "rigorous analysis" standard, does not establish an ascertainable class, does not establish each of the prerequisites of Rule 23, and does not support a finding that this action is appropriate for class treatment. Indeed, it is no coincidence that the applicable standard and phrase "rigorous analysis" is nowhere to be found in Plaintiffs' Motion. It is also no coincidence that despite the thousands of pages of records reviewed by Plaintiffs and their "expert," Plaintiffs fail to direct the Court to key evidence discussed below that shows that in addition to the two solicited faxes Plaintiffs selectively chose to rely on to assert their infirm claim, Plaintiffs actually received an earlier unalleged fax 3 minutes after Plaintiffs ended a telephone call from the very telephone and fax account Plaintiffs seek to rely on to establish a speculative and overbroad class.

Plaintiffs' Motion seeks to certify a nationwide class of an unknown number of putative class members whose fax numbers appear a total of 62,465 times on the telephone and fax records produced by non-party RingCentral, Inc. (the "Ring Central Records") for an account (the "Ring Central Account") registered to "Merchant Services" – a general name used by

1

multiple companies, including Merchant Payment Processing, Inc. ("MPP"), also a non-party.[1]
Plaintiffs try to create a class by asserting **unknown** class members purportedly received an
**unknown** fax on dates chosen by Plaintiffs to create a "Class Period," which unknown faxes
Plaintiffs **speculate** to be unsolicited advertisements of the goods and services of NAB. Based on
these unknowns and speculations, Plaintiffs deduce, without any evidentiary support or basis,
that NAB  violated the Telephone Consumer Protection Act, 47 U.S.C. § *227 et seq.* (the
"TCPA") only because NAB used MPP for some marketing services and MPP was one of many
different companies to use the Ring Central Account. Plaintiffs leap to this conclusion to seek
millions of dollars in unwarranted and inapplicable damages from NAB despite Plaintiffs:

- providing their fax number to MPP – one of the entities that used the general name
  "Merchant Services" – for the express purpose of receiving NAB's merchant processing
  application;[2]

- receiving a fax from MPP only 3 minutes after Plaintiffs' office provided MPP
  permission to send fax transmissions;

- receiving a personalized fax to "Jessica/Sports Inj Ctr W Loop Chiropractic[;]"

- knowing the business practice of MPP consists of calling businesses and receiving
  express permission prior to sending any faxes;

- relying upon unlawful, and thus inapplicable, rules and regulations of the Federal
  Communications Commission (the "FCC") that required fax advertisements sent with the
  recipient's permission to contain an opt-out notice;

- knowing multiple companies unrelated to NAB have access to and use the "Ring Central
  Account that includes thirty-nine (39) different fax numbers; and

- lacking knowledge of, and Plaintiffs' expert being unable to opine to, the content of <u>any</u>
  purported fax Plaintiffs claim to have been sent over 62,000 times, and the relationship, if

---

[1] MPP entered into an agreement with NAB whereby MPP was permitted to market NAB's services under specified conditions. (Dkt. 73)

[2] Quite astonishingly and as will be show herein, Plaintiffs received a fax transmission from the Ring Central Account **3 minutes after** ending a telephone call with the Ring Central Account. Plaintiffs noticeably do <u>not</u> bring the call or the fax this to the Court's attention despite having access to the identical records produced by the Ring Central Account reflecting this fact that NAB does.

any, between NAB and such unknown faxes sent from any of the multiple fax numbers associated with the Ring Central Account that multiple companies access and use.

The evidence already shows that individual inquiries are necessary to establish the substance of the unknown faxes sent from any of the 39 different fax numbers associated with the Ring Central Account that multiple companies have access to and use. Further, assuming *arguendo* such unknown faxes can even be established to be advertisements promoting the goods and services of NAB, individual inquiries are necessary to determine whether such faxes were sent upon the invitation or permission of the respective recipients. Plaintiffs' attempt to have this Court define a speculative and overbroad class is simply not proper for class treatment. As set forth below, the recent confirmation of the inapplicability of the opt-in language Plaintiffs rely on as to solicited faxes such as the ones at issue in this case further supports denying Plaintiffs' Motion as it highlights the individual inquiry required for each fax. *See Bais Yaakov of Spring Valley v. Federal Communications Commission*, --F.3d--, No. 14-1234, 2017 WL 1192909 (D.C. Cir. March 31, 2017).[3]

Plaintiffs' speculation and theories notwithstanding, Plaintiffs simply do not carry their burden under Federal Rule of Civil Procedure 23 and the Motion should be denied.

## II. BACKGROUND

NAB entered into an agreement with MPP whereby MPP was permitted to market NAB's services under specified conditions. (Dkt. 73). One such condition is that MPP may only use marketing materials that have received NAB's prior written approval. (Dkt. 73 at ¶2.7(a)). MPP is not a party to this action. (Dkt. 1).

---

[3] A true and correct copy is attached hereto as Ex. A.

MPP's agents have access to the Ring Central Account. (Ex. B, Sandor Depo at 163:20-166:1).[4] The Ring Central Account contains 39 different fax numbers. (Dkt. 111-16 at ¶6; Ex. C, Declaration of Lawren Zann at ¶4, Ex. 1). Some of the 39 fax numbers could also be used to make telephone calls. (Ex. C, Declaration of Lawren Zann, Ex. 1). The Ring Central Account is registered to "Merchant Services." (Dkt. 111-16 at ¶5). "Merchant Services" is a general name under which multiple entities operate, including MPP. (Ex. B, Sandor Depo at 128:5-13; 159:9-161:23). MPP's agents used the same Ring Central Account to place phone calls and send faxes on behalf of other companies; not just NAB. (Ex. B, Sandor Depo at 45:3-7; 45:17-23;163:1-163:10; 166:2-23). Here, MPP's business practice is to send faxes to businesses <u>only after</u> communicating with the respective business via telephone and discussing the merchant processing services of NAB, and <u>only upon</u> the respective business' request to receive via fax an application for the merchant processing services of NAB, and <u>only after</u> the respective business provides a contact name and fax number to receive such an application. (Ex. B, Sandor Depo at 15:18-16:19; 36:22-25; 39:25-40:21; 43:21-44:17; 68:3-16; 94:1-5). MPP did not purchase any fax lists. (Ex. B, Sandor Depo at 53:12-17). Indeed, the very faxes Plaintiffs seek to rely upon to turn the receipt of two (2) solicited faxes into a nationwide class action are addressed to "Jessica" at Plaintiffs' offices (Dkt. 1-1; 1-2) who also just so happens to be an administrative assistant at such offices (Ex. D at ¶A), which is entirely consistent with MPP's practice to only send a merchant processing application via fax if the respective business requests it after discussing the matter with MPP over the telephone. (Ex. B, Sandor Depo at 15:18-16:19; 36:22-25; 39:25-40:21; 43:21-44:17; 68:3-16; 94:1-5). Indeed, Plaintiffs received a telephone call from the Ring Central Account on March 22, 2016, followed by a fax transmission from the same Ring Central

---

[4] Depositions are referenced by exhibit number, deponent name, and page and line number.

Account only **3 minutes after** the telephone call ended. (Ex. C, Declaration of Lawren Zann at ¶7, Ex. 2). **Plaintiffs do not inform the Court of this crucial evidence**. NAB did not pay MPP for MPP's marketing expenses. (Ex. B, Sandor Depo at 92:6-15). MPP is no longer doing business with NAB. (Ex. B, Sandor Depo at 92:16-19).

As recognized by Plaintiffs' Motion, MPP created the fax cover sheet associated with the documents attached to Plaintiffs' Complaint as Exhibits A and B (the "Faxes at Issue") (*i.e.,* page 1 of the Faxes at Issue, respectively) and added information to the merchant processing application of NAB (*i.e.,* pages 2-5 of the Faxes at Issue, respectively). (Ex. B, Sandor Depo at 62:11-20; Dkt. 111 at p.5). NAB did not approve the fax cover sheet prepared by MPP. (Ex. B, Sandor Depo at 63:6-64:5). In response to a non-party document subpoena, MPP produced multiple fax cover sheets used by MPP concerning NAB that are substantially different than the Faxes at Issue purportedly received by Plaintiffs pursuant to Plaintiffs' invitation or permission. (Ex. B, Sandor Depo at 153:16-24; Ex. E). Perhaps unsurprisingly, Plaintiffs fail to bring this portion of MPP's production to the Court's attention, and simply assume that these different cover sheets were not sent during the Class Period.

As Plaintiffs concede, the Ring Central Records do not identify the content of the documents that were faxed by "Merchant Services," including those that were faxed by MPP, from any of the 39 different fax numbers contained in the Ring Central Account. (Dkt. 111-11 at p.6). The Ring Central Records also do not identify which of the multiple entities which operate under the general name "Merchant Services," including MPP, may have sent any fax reflected in the Ring Central Records. Nonetheless, Plaintiffs seek to leap to the broad conclusion Plaintiffs' counsel instructed Plaintiffs' paid "expert," Robert Biggerstaff ("Biggerstaff"), to rely upon that the supposed "Class Period" is based on "the dates on the returned merchant application as well

as other evidence plaintiffs compiled."[5] (Dkt. 111 at p.6; Dkt. 111-13 at ¶2). Plaintiffs posture about but fail to identify what "other evidence" they compiled. Biggerstaff only reviewed the Ring Central Records in preparing his "report." (Dkt. 111 at p.5 ("Biggerstaff reviewed the following materials in generating his report in this case: RingCentral records."); Dkt. 111-13 at ¶15).

Indeed, Biggerstaff's "report" does not indicate which of the 39 different fax numbers contained in the Ring Central Account sent faxes in violation of the TCPA. (Dkt. 111-13). Rather, Biggerstaff's report (and Plaintiffs) simply and improperly assumes, without any basis, all fax numbers reflected on each respective "Class Period" date were used by MPP to send faxes promoting the goods and services of NAB. Biggerstaff's report does not indicate the content of any fax sent from any of the multiple different fax numbers contained in the Ring Central Account on the dates Plaintiffs declare to be the "Class Period." (Dkt. 111-13). Biggerstaff's report (and Plaintiffs) simply and also improperly assumes all faxes sent during the "Class Period" from each of the multiple different fax numbers contained in the Ring Central Account were faxes promoting the goods and services of NAB. Similarly, Biggerstaff's report does not indicate which of the multiple companies that has access to and use the 39 different fax numbers contained in the Ring Central Account sent faxes in violation of the TCPA. (Dkt. 111-13). Rather, Biggerstaff's report (and Plaintiffs) relies on an incorrect assumption that only MPP has access to and uses the multiple different fax numbers contained in the Ring Central Account. Biggerstaff's report also does not indicate any relationship between the telephone numbers that received a telephone call from any of the multiple companies that use the Ring Central Account and the fax numbers that received a fax from any of the multiple companies that use the Ring

---

[5] Even Plaintiffs' speculative, specious methodology is flawed as none of the "merchant applications" were faxed on April 28 or August 11. (Ex. C, Declaration of Lawren Zann at ¶¶7-26, Exs. 2-21)

Central Account. (Dkt. 111-13). Nonetheless, Biggerstaff keeps the unsupported opinion that all of the unidentified faxes sent from any one of the 39 different fax numbers contained in the Ring Central Account used by multiple different companies unrelated to NAB were consistent with fax broadcasts to lists of numbers that were compiled three (3) or more years in the past. (Dkt. 111-13, ¶49). Contrary to Biggerstaff's unsupported conclusion, an actual comparison of the Ring Central Records, which reflects received telephone calls on the Class Period dates, to the telephone numbers reflected on the "returned merchant applications" (*i.e.,* the basis for Plaintiffs' conclusory "Class Period") reveals at least eighteen (18) of the twenty-three (23)[6] "returned merchant applications" (*i.e.,* the basis for Plaintiffs' conclusory "Class Period") received a telephone call <u>prior</u> to any purported fax transmission, which is entirely consistent with the business practice of MPP as testified to by its representative, Sandor Kriszan. (Ex. C, Declaration of Lawren Zann at ¶¶9-26, Exs. 4-21). The same holds true for Plaintiffs and Inspe Association, Ltd. (Ex. C, Declaration of Lawren Zann at ¶¶7-8, Exs. 2-3). Thus, the Ring Central Records are consistent with the previously described testimony that MPP would send faxes to a business only <u>after</u> the business invited and permitted same by, among other things, providing its fax number and a point of contact. (Ex. B, Sandor Depo at 15:18-16:19; 36:22-25; 39:25-40:21; 43:21-44:17; 68:3-16; 94:1-5).

In light of the recent ruling in *Bais Yaakov of Spring Valley*, 2017 WL 1192909, Plaintiffs' TCPA claim rests solely on their allegation that the received Faxes at Issue were unsolicited. An "unsolicited advertisement" is defined by the TCPA to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*, in writing

---

[6] "NAB_000243-NAB_000247" is a duplicate of "NAB_000271-NAB_000275."

or otherwise." 47 U.S.C. § 227(a)(5) (emphasis added). Plaintiffs' claim is belied by the facts of the case – actual facts Plaintiffs noticeably seek to shield from the Court – because Plaintiffs "gave [MPP] permission to send" the Faxes at Issue (Ex. B, Sandor Depo at 68:16; 68:25-69:1), which obtained permission is consistent with MPP's business practice. (Ex. B, Sandor Depo at 15:18-16:19; 36:22-25; 39:25-40:21; 43:21-44:17; 68:3-16; 94:1-5). Such claim is further contradicted by the Ring Central Records that reflect a telephone call on March 22, 2016, between MPP at (888) 425-2291 and Plaintiffs at (312) 346-9356[7] that lasted for one minute and thirty-four seconds followed **3 minutes later** by a fax transmission from MPP at (888) 220-8844 to Plaintiffs at (312) 346-9358.[8] (Ex. C, Declaration of Lawren Zann at ¶7, Ex. 2). The Ring Central Records even reflect a follow-up call between MPP at (888) 425-2291 and Plaintiffs at (312) 346-9355[9] on May 23, 2016 – eleven (11) days before Plaintiffs filed this hollow lawsuit. (*Id.*). Plaintiffs' claim is further undercut by the personalized nature of the Faxes at Issue addressed to "Jessica" and "Sports Inj Ctr W Loop Chiropractic[;]" not coincidentally West Loop Chiropractic & Sports Injury Center, Ltd. ("West Loop Ltd.") employs "Jessica Tcaciuc" as an administrative assistant. (*See* Ex. D at ¶A). Thus, contrary to the affidavit of Plaintiffs' representative, Dr. Alden Clendenin (Dkt. 111-19), who does not deny Jessica is an employee of West Loop Ltd., Plaintiffs not only invited or permitted MPP to send the Faxes at Issue, but actually provided the information necessary for MPP to do so.

Perhaps finding comfort and/or feeling emboldened by the ability to take advantage of the risk MPP may have taken in sending a solicited fax lacking an opt-out notice while the rules and regulations of the FCC were being challenged, Plaintiffs took the position that an opt-out

---

[7] (312) 346-9356 is the telephone number reflected on the Faxes at Issue,
[8] (312) 346-9358 is the telephone number reflected on the Faxes at Issue.
[9] (312) 346-9355 is the telephone number reflected on the website of Plaintiff West Loop Chiropractic & Sports Injury Center, Ltd. *See* http://www.sportsinjurycenters.com/chiropractor-west-loop-chicago/ (last visited March 31, 2017).

notice was somehow necessary on the Faxes at Issue that Plaintiffs invited and permitted. (Dkt. 1, ¶20; Dkt. 111, p.8). However, as set forth fully below, the Plaintiffs cannot rely on such rules and regulations that have no basis in the actual text of the TCPA and that have been declared unlawful. Thus, Plaintiffs' legally deficient argument cannot support their claim and certainly cannot support a speculative attempt to turn a specious claim into a nationwide class action; particularly as individual examinations into the facts and circumstances surrounding each putative class member would be required.

### III. ARGUMENT

"The class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Towards this end, a class "may only be certified if the trial court is satisfied after a rigorous analysis" that Federal Rule of Civil Procedure 23 has been satisfied, and "actual, not presumed, conformance" with such Rule is indispensable. *General Tel.*, 457 U.S. at 160-161 (emphasis added); *see also Comcast Corp. v. Behrend*, --U.S.--, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). This is particularly true as "[c]ertification as a class action can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *CE Design Ltd. v. King Architecture Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011); *see also* Fed. R. Civ. P. 23(f) Advisory Committee Notes (1998) ("An order granting certification…may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability."). The requisite rigorous analysis

frequently demands "overlap with the plaintiff's underlying claim." *Comcast Corp.*, 133 S.Ct. at 1432. Thus, courts should exercise caution in certifying a class. *Thorogood v. Sears Roebuck and Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

Plaintiffs, as the parties seeking class certification, must prove that all of the requirements of Rule 23 are satisfied. *Wal-Mart Stores, Inc.*, 564 U.S. at 350*; see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Thus, Plaintiffs must satisfy each requirement of Rule 23(a) – numerosity, commonality, typicality, and adequacy – and one section of Rule 23(b) – here, predominance and superiority. *Oshana*, 472 F.3d at 513. "Failure to meet any of [Rule 23's] requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (emphasis added). In addition to satisfying Rule 23, Plaintiffs also must provide the Court a workable class definition by demonstrating that the members of the supposed class are ascertainable and identifiable. *Oshana*, 472 F.3d at 513.

Here, the Court should exercise its discretion and determine certification of the class proposed by Plaintiffs is not appropriate.

### A.  Opt-Out Notice is Not Required On Solicited Advertisements

The TCPA, on its face, prohibits the use of a fax machine to send "an unsolicited advertisement" unless certain requirements are met, including, as pertinent to this action, an opt-out notice. *See* 47 U.S.C. § 227(b)(1)(C). The TCPA, on its face, does not seek to regulate "solicited or consented-to fax advertisements." *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013); *see also* 47 U.S.C. § 227. Nonetheless, in 2006 the FCC issued a rule requiring a sender of a fax advertisement to include an opt-out notice on the advertisement, even when the sender "obtained permission" from the recipient of such advertisement (the "Solicited Fax Rule"). *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax*

10

*Prevention Act of 2005*, 71 FR 25967-01, 2006 WL 115184 (May 3, 2006). The Solicited Fax Rule was codified at 47 C.F.R § 64.1200(a)(4)(iv). The Solicited Fax Rule was not created by Congress and is not contained in the TCPA. *See* 47 U.S.C. § 227. Courts have questioned the substantive validity of the Solicited Fax Rule, suggesting that it exceeds the authority conferred upon the FCC by Congress under the TCPA and that it violates the First Amendment. *See, e.g., Nack*, 715 F.3d at 682 ("[I]t is questionable whether the regulation…properly could have been promulgated under the statutory section that authorizes a private cause of action."); *see id.* at 687 ("Suffice it to say, the analysis and conclusion…would not necessarily be the same if applied to the agency's extension of authority over solicited advertisements."). However, the district courts within this Circuit and elsewhere were precluded from entertaining challenges to the validity of the Solicited Fax Rule due to the Hobbs Act, which provides the courts of appeals, and not the district courts, with exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the FCC. *See* 28 U.S.C. § 2342.

Indeed, on Friday, March 31, 2017, during the pendency of this action, the D.C. Circuit with jurisdiction to address the Solicited Fax Rule answered the question of "whether the [TCPA's] requirement that businesses include an opt-out notice on *unsolicited* fax advertisements authorizes the FCC to require businesses to include an opt-out notice on *solicited* fax advertisements" with an unequivocal "no." *Bais Yaakov of Spring Valley,* 2017 WL 1192909, at *1-3 (D.C. Cir. March 31, 2017) (emphasis in original). In reaching its decision, the D.C. Circuit stated:

> Congress drew a line in the text of the statute between unsolicited fax advertisements and solicited fax advertisements. Unsolicited fax advertisements must include an opt-out notice. But the Act does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements. It is the Judiciary's job to respect the line drawn by Congress, not redraw it as we might think best.

11

***

> Congress has not authorized the FCC to require opt-out notices on solicited fax advertisements. And that is all we need to know to resolve this case.

*Id.* at *3. Because the "Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes[,]" *id.* at *4, it follows that 47 C.F.R § 64.1200(a)(4)(iv), which codified the Solicited Fax Rule, is also unlawful and unavailing in this action.

Accordingly, even if this Court were to indulge Plaintiffs' speculation and was able to determine each of the unknown faxes sent from multiple fax numbers that are used by multiple entities, including, but not limited to, MPP, were somehow considered to be advertisements that MPP sent promoting NAB's goods and services, the invited or permitted nature of same as testified to by MPP, particularly as supported by the Ring Central Records and the personalized nature of the Faxes at Issue, provides a <u>complete defense</u> to any class member like Plaintiffs who invited or permitted the unknown faxes.

## B. Plaintiffs Lack Standing

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)).

As stated, the TCPA, on its face, prohibits the use of a fax machine to send something Plaintiffs noticeably do not allege in their class definition, "an unsolicited advertisement," and even then, it is only prohibited if certain requirements are not met, including, as pertinent to this action, an opt-out notice. *See* 47 U.S.C. § 227(b)(1)(C). The D.C. Circuit has determined the Solicited Fax Rule, which is what Plaintiffs seek to apply here, is unlawful. *See Bais Yaakov of*

12

*Spring Valley*, 2017 WL 1192909. Thus, Plaintiffs' reliance on "47 C.F.R. § 64.1200(a)(3)"[10] (Dkt. 111 at p.8) to support their argument that the inapplicable unsolicited advertisement opt-out notice requirement "is extended by the regulation to cases where a fax is sent with consent[]" (*id.*) is misplaced as such regulation has been determined to be unlawful. Because the evidence shows that Plaintiffs consented to receive the Faxes at Issue, the Faxes at Issue cannot be deemed unsolicited, and because the Faxes at Issue are solicited, no opt-out notice was required. *See Bais Yaakov of Spring Valley*, 2017 WL 1192909. Because Plaintiffs do not have standing to assert violations of the TCPA, and cannot assert any injury suffered by those as yet unidentified and unknown persons who supposedly received unknown faxes from the Ring Central Account, Plaintiffs' Motion, at the very least, must be denied.

Plaintiffs reliance upon the factually distinguishable *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp.3d 482 (W.D. Mich. 2014) for the proposition that "express permission" cannot be transferred to a third party is inapposite; particularly as the *Physicians Healthsource, Inc.* Court specifically stated "[a]t a minimum, no one – not Plaintiff or any of its employees – gave any direct consent to the sender of the fax at issue here, or to the marketing company that provided the fax list to the sender." *Id.* at 497 (emphasis added). Additionally, Plaintiffs' assert in their own Motion that MPP is an alleged agent of NAB who, as agent, acts on behalf of NAB, as principal. (Dkt. 111 at pp. 2, 12). Thus, MPP's act of obtaining permission from Plaintiffs to send the Faxes at Issue is an act on behalf of NAB, as principal, that extends such permission to the alleged principal. *See* Restatement (Third) of Agency § 1.01 (2006).[11]

---

[10] Presumably Plaintiffs intended to rely upon 47 C.F.R. § 64.1200(a)(4)

[11] The federal common law of agency is in "accord with the Restatement." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000)

13

### C.  The Class Is Not Definite

Rule 23 implicitly requires Plaintiffs' proposed class to be "sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 493 (7th Cir. 2012). Thus, ascertainability is a "threshold issue – if the class cannot be identified then courts cannot reliably assess whether an action on behalf of that class satisfies the express requirements of Rule 23." *N.B. v. Hamos*, 26 F.Supp.3d 756, 763 (N.D.Ill. 2014). Stated differently, a class is not sufficiently definite if it could include a substantial number of people who have no claim under the theory advanced by Plaintiffs. *See Oshana*, 472 F.3d at 513; *see also Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D.Ill. 2011). While Plaintiffs need not identify every class member, they must define the class with reference to "objective criteria" and propose "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *N.B.*, 26 F.Supp.3d at 763 (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)); *see also Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 370 (N.D.Ill. 2008) (Class membership must be determined through a "ministerial review" rather than "arduous individual inquiry."). If "there is no way to know or readily ascertain who is a member of the class," then the class "lacks definiteness required for class certification." *Jaime S.*, 668 F.3d at 496; *see also N.B*, 26 F.Supp.3d at 763 ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.") (citing *Hayes*, 725 F. 3d at 355); Manual for Complex Litigation § 21.222, at 270 (class definition "must be precise, objective, and <u>presently</u> ascertainable.") (emphasis added).

Plaintiffs seek to certify a class consisting of:

14

> All persons with fax numbers, who during the Class Period, were sent faxes by or on behalf of defendant North American Bancard, LLC promoting its goods or services for sale.

(Dkt. 111 at p.1). This class definition, on its face, is overbroad as not only does it include *any* recipient of any fax that differs from the Faxes at Issue (including such faxes containing the 4 different cover sheets produced by MPP), but also includes such recipients who either invited and permitted such unknown fax or maintained an established business relationship with NAB.

Plaintiffs further declare the "Class Period" to be:

> April 6, 8, 12, 18, 20, 25, 26, 27, 28, May 4, 9, 12, 20, 25, 26, June 8, 23, August 4, 8, 9, 10, 11, 12, 18 and 23, 2016.

(*Id.*). The "Class Period" Plaintiffs randomly identify appears to be "based on the dates on the returned merchant applications[12] as well as other evidence plaintiffs compiled," the Faxes at Issue, and a fax sent to "Gabby" from Inspe Association, Ltd. (the "Inspe Fax to Gabby"), which is another client of Plaintiffs' counsel, but not a party to this action. (*Id.* at p.6). Plaintiffs do not state or specify what "other evidence" they relied upon in creating the supposed "Class Period."

Plaintiffs speculation notwithstanding, there is no objective mechanism for the Court to determine whether putative class members fall within the class definition such that a substantial number of putative members who do not have TCPA claims against NAB are not included. Plaintiffs are only able to advise of the purported content of three (3) faxes purportedly sent by MPP promoting the goods and services of NAB that Plaintiffs seek to say are in violation of the TCPA despite having been solicited by the recipients: the Faxes at Issue and the Inspe Fax to Gabby (collectively, "Exhibits A-C").[13] (Dkt. 111-1, 111-2, 111-3). Nonetheless, Plaintiffs

---

[12] NAB produced 23 merchant applications sent from MPP to NAB. Plaintiffs incorrectly state all such applications "have fax transmission headers similar to those on Exhibits A-C." (Dkt. 111 at p.6). Plaintiffs are incorrect in such a statement. (Dkt. 111-5, NAB_000160 through NAB_000275).

[13] Noticeably, Plaintiffs' Motion states Exhibit A-C are "substantially similar." (Dkt. 111 at p.6). Yet, Plaintiffs previously stated Exhibit A-C, while similar in some respects, nonetheless "bear[] some differences in the design of

declare the receipt of Exhibits A-C personalized to two (2) different and specific people at two (2) different companies to be a common question that predominates over individual inquiries. Plaintiffs do not even argue, never mind establish, what supposedly was sent to any other putative class member, let alone that such class members were sent something like Exhibits A-C.

Based on nothing more than pure speculation, Plaintiffs declare a "Class Period" that purportedly corresponds to dates 23 businesses received *something* via fax, which *something* Plaintiffs believe to be NAB's "merchant application" despite being unable to establish what, if anything, purportedly accompanied the fax transmission of such "merchant applications" to make such faxes similar to Exhibits A-C. Despite Plaintiffs' concession that no records exist identifying the content of "the documents that were faxed" (Dkt. 111 at p.6), Plaintiffs nonetheless conclude that such 23 businesses received Exhibits A-C because these businesses "returned merchant applications" containing "fax transmission headers similar to those on Exhibits A-C."[14] This is simply incorrect as one (1) of the "returned merchant applications" contains no fax transmission header at all (Dkt. 111-5, NAB_000169-NAB_000172) and at least four (4) of the "returned merchant applications" contain a header reflecting a fax transmission from MPP to NAB and/or a header reflecting a fax transmission from the business to MPP (Dkt. 111-5, NAB_000173-NAB_000177, NAB_000178-NAB_000182, NAB_000198-NAB_202, NAB_000266-NAB_000270).

---

the faxes" (Dkt. 78 at ¶6), which differences this Court relied upon, in part, in resolving a discovery dispute; specifically, distinguishing this Court's prior ruling in *Fauley v. C. Specialties, Inc.*, 15-cv-5581 (Dkt. 36) (N.D.Ill. Oct. 28, 2015). *See West Loop Chiropractic & Sorts Injury Center, Ltd. v. North American Bancard, LLC,* No. 16-cv-5856, 2017 WL 404896 (N.D.Ill. Jan. 30, 2017) ("In addition, Plaintiffs here have supplemented their Rule 26(a)(1) disclosures with the name of [Gabby from Inspe Association, Ltd. who received] a fax from NAB that did not contain an opt-out notice that is different from the fax received by the named Plaintiffs."). Plaintiffs shifting view of their own case is quite telling.

[14] The fact a merchant application was completed and returned also confirms the consensual nature of the fax transmission

At best, Plaintiffs are <u>only</u> able to state 18 of the 23 "returned merchant applications" reflect MPP faxed a *merchant application* to these 18 recipients, which MPP testified would have been sent only upon request, which testimony is supported by the Ring Central Records. (Ex. C, Declaration of Lawren Zann at ¶¶7-26, Exs. 2-21). Plaintiffs have no idea what, if anything, accompanied such application, and an application without more cannot be considered an advertisement under the unique facts in this case.

Importantly, to prevail on their claims, Plaintiffs must establish that NAB: "(1) used a telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was unsolicited; and (3) <u>the facsimile constituted an advertisement</u>." *Grind Lap Services, Inc. v. UBM LLC*, No. 14 C 6448, 2015 WL 6955484, *3 (N.D.Ill. Nov. 10, 2015) (quoting *Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802, 205 (N.D.Ill. 2008) (emphasis added). The FCC has determined "messages whose purpose is to <u>facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into</u> with the sender are not advertisements for purposes of the TCPA's facsimile advertising rules." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, ¶49 (Apr. 6, 2006); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 FR 25967, 25972 (May 3, 2006). As stated, the merchant processing applications were only sent by MPP to facilitate and/or complete the commercial transaction that the recipient was advised of and requested such applications to execute. (Ex. B, Sandor Depo at 15:18-16:19; 36:22-25; 39:25-40:21; 43:21-44:17; 68:3-16; 94:1-5). Accordingly, the "returned merchant applications," standing alone (*i.e.,* without the cover page included in Exhibits A-C), do not come close to being the advertisement Plaintiffs seek to morph them into, as they were sent to, and returned fully executed by, the

respective businesses in order to complete the commercial transaction discussed telephonically with MPP. Plaintiffs' Motion implicitly concedes this. (Dkt. 111 at p.5 ("The first page of Exhibit A-C [(*i.e.* a cover sheet)] contains NAB's name, described NAB's goods and services: a "Limited time offer!" to lower merchant's rate for processing credit card transaction, offers EMV replacement equipment, and invites the recipient to complete the "attached [merchant processing application].)[15]).

Plaintiffs' speculation markedly fails to take into consideration the 4 different fax cover sheets used by MPP concerning NAB. (Ex. B, Sandor Deposition at 153:16-24; Ex. E). Of these, three clearly are not advertisements as one is a "thank you for your business" email that is sent after an application is submitted, one requests additional information to complete an already submitted application, and one provides instructions on the use of the equipment already obtained from NAB. (Ex. E). This highlights Plaintiffs inability to objectively establish *what* was faxed from any of the multitude of fax numbers associated with the Ring Central Account during the "Class Period," which inability renders an unascertainable putative class as this Court would have to query each putative class member to determine who received what and from whom, only to then embark on a determination as to whether such fax promoted the goods and services of NAB, and whether such fax was unlawfully sent (*i.e.* unsolicited, no established business relationship, and no opt-out). Plaintiffs fail to define the class based on a ministerial review of available records, as opposed to an arduous individual inquiry into the circumstances of most, if not all, potential class members. Accordingly, this Court should deny Plaintiffs' attempt to brush actual facts under the proverbial rug and deny class certification.

---

[15] As Plaintiffs' Motion does all too frequently, their description is misleading at best as it appears to purposely omit the personalized nature of each fax as well as the language reflecting a conversation between MPP and the recipient.

### D. Plaintiff Cannot Establish The Rule 23(a) Prerequisites

#### 1. Numerosity cannot be established.

Rule 23 requires a putative class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As recognized by Plaintiffs' Complaint (Dkt. #1, ¶31), "[a] class of forty generally satisfies the numerosity requirement." *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *4 (N.D.Ill. Jan. 25, 2011); *see also Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D.Ill. 2008). Numerosity is not established through "mere speculation or conclusory allegations as to the size of the putative class[.]" *Arreola*, 546 F.3d at 788.

As has been shown and conceded, Plaintiffs are unable to establish the content of the grossly overwhelming majority of faxes sent from any of the multiple different fax numbers assigned to the Ring Central Account that multiple different entities have access to and use. Speculation aside, Plaintiffs can only establish <u>3</u> personalized and solicited faxes were received containing a similar cover letter that could possibly be deemed an advertisement (*i.e.* Exhibits A-C). (Dkt. 111-1, 111-2, 111-3). Indeed, even assuming *arguendo* Plaintiffs could establish the 23 "returned applications" (Dkt. 111-5, NAB_000160-NAB_000275) are somehow unsolicited fax advertisements, Plaintiffs still fall far short of establishing numerosity under the Court's rigorous analysis

#### 2. Commonality cannot be established.

Rule 23 requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, Plaintiffs must establish the members of the putative class "suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. All of the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is

capable of classwide resolution – which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs cannot meet their burden to establish commonality based on the overwhelming nature of individual inquiries this Court would have to entertain. At best, the only thing common about Plaintiffs claim is that MPP would only have sent a solicited fax on behalf of NAB, and therefore Plaintiffs claim is baseless. Plaintiffs cannot establish the content of the purported faxes sent from any of the multiple different fax numbers assigned to the Ring Central Account registered to "Merchant Services" that multiple companies, including MPP, have access to and use. Plaintiffs simply speculate that because *some* of the fax transmission headers on the "returned merchant applications" reflect such applications were faxed by "Merchant Services" on *some* of the "Class Period" dates, such applications must be advertisements promoting the goods and services of NAB. Plaintiffs further speculate that because "Merchant Services" faxed merchant processing applications on *some* of the "Class Period" dates, every fax that sent *something* from any fax number assigned to the Ring Central Account registered to "Merchant Services" during the "Class Period" must have been similar to Exhibits A-C, which purportedly results in the same injury to each unknown recipient of such speculative fax activity. Such speculation hardly suffices to meet Plaintiffs' burden of proof; particularly as Exhibits A-C actually show the lack of commonality as a result of the personalized nature of the respective faxes to "Gabby" and "Jessica"[16] that only could have occurred upon invitation and permission as testified to by MPP and further supported by the Ring Central Records. Plaintiffs' attempt to disregard the facts cannot possibly withstand this Court's rigorous analysis.

---

[16] Indeed, if MPP were blasting a template, unsolicited fax advertisement to class members as Plaintiffs desperately seek to convince the Court, such speculative fax blasting would not involve personalized faxes as the time it takes to personalize each fax would render the concept of fax blasting meaningless.

Nonetheless, even if such speculation could somehow withstand the Court's rigorous analysis, the invited and permitted nature of the Faxes at Issue, the Inspe Fax to Gabby, and the "returned merchant applications" would, at best, result in multiple individual inquiries as opposed to a single common contention controlling the disposition of this action; particularly as the Ring Central Records reveal Plaintiffs, Inspe Association, Ltd., and a majority of the businesses that "returned merchant applications" received telephone calls _prior_ to any fax transmission as MPP testified was its business practice.

### 3. Typicality cannot be established.

Typicality and commonality are closely related as they "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." _General Tel._, 457 U.S. at 158. Indeed, "only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." _Mace v. Van Ru Credit Corp._, 109 F.3d 338, 341 (7th Cir. 1997).

Rule 23 requires Plaintiffs' claim to be "typical of the claim[]…of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." _Oshana_, 472 F.3d at 514 (quoting _Rosario v. Livaditis_, 963 F.2d 1013, 1018 (7th Cir. 1992)). Typicality "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." _Muro v. Target Corp._, 580 F.3d 485, 492 (7th Cir. 2000) (quoting _De La Fuente v. Stokely-Van Camp, Inc._, 713 F.2d 225, 232 (7th Cir. 1983). "[T]he presence of even an arguable defense peculiar to the named

plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class[.]" *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) (citing *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974)). Typicality is not established and a class "should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Vigus*, 274 F.R.D. at 236 (quoting *Kohen v Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)).

The Faxes at Issue were sent pursuant to Plaintiffs invitation and permission. Accordingly, Plaintiffs supposed "claims" are not typical of the fictitious class as Plaintiffs suffered no injury. Further, Plaintiffs supposedly seek to pursue "claims" of an unidentified class of persons who received different but unknown faxes. Under either instance, this action is not proper for class treatment.

The evidence already establishes Plaintiffs invited and permitted the Faxes at Issue. Plaintiffs, through a self-interested "affidavit," dispute what the evidence reveals. At the very least, Plaintiffs credibility is called into question by the evidence of the solicited Faxes at Issue. The evidence further establishes many, but not all, of the recipients who "returned merchant applications" – the basis upon which Plaintiffs speculatively define the "Class Period" – also invited and permitted MPP to fax the merchant processing applications. Thus, it is apparent that the defense of consent is certainly available to defend against some claims, including those of Plaintiffs who cannot possibly represent the as yet unknown, supposedly non-consenting class members who received unknown faxes. By the same token and as this Court already agreed, the defenses of waiver and estoppel may also be available to defend against the claims of some of the putative class members, including Plaintiffs. The Court agrees. (Dkt. 47).

Additionally and as argued in NAB's Opposition to Plaintiffs' Motion to Strike Amended Affirmative Defenses, which argument is adopted and incorporated as if fully set forth herein (Dkt. 41 at Section II(B)(1)), because Plaintiffs seek actual damages, Plaintiffs are subject to a failure to mitigate defense for waiting until multiple faxes were received before taking any action to stop same (and by "action," NAB refers to Plaintiffs filing a lawsuit less than forty (40) days after Plaintiffs alleged receipt of the last of the Faxes at Issue). The Court agrees that such defense may be available to NAB. (Dkt. 47). Further, and as argued in NAB's Opposition to Plaintiffs' Motion to Strike Amended Affirmative Defenses, which argument is adopted and incorporated as if fully set forth herein (*id.* at II(C)(3)), because each of the Plaintiffs seeks to recover damages for each "fax transmission resulting in thousands of dollars in recovery" for each of the Faxes at Issue, Plaintiffs improperly seeks to assert multiple recoveries "stemming from a singular fax transmission." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *6 (N.D.Ill. Oct. 14, 2009); *see also A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC*, No. 12-21695-CIV, 2013 WL 3463489, at *5 (S.D. Fla. July 3, 2013)  Again, the Court agrees that such defense may be available to NAB. (Dkt. 47).

These multiple defenses, already determined to be applicable in nature, are peculiar to Plaintiffs and/or a subset of the putative class (*i.e.* those who consented to receive the unknown faxes, those who received multiple faxes, and those who seek to recover damages as owners, but not recipients), and therefore even if somehow a solicited fax that does not violate the TCPA (*i.e.,* the Faxes at Issue) somehow establishes the other pre-requisites of Rule 23, typicality does not exist in this case, and class treatment is inappropriate.

Plaintiffs' inability to establish the content of the faxes received by the putative class members from any of the multiple fax numbers assigned to the Ring Central Account cannot

possibly establish all claims of the putative class arise out of the same alleged conduct of NAB without engaging in a painstaking, individual inquiry of each putative class member. *See Brodsky v. HumanaDental Insurance Company*, No. 1:10-cv-03233, 2016 WL 5476233, at *13 (N.D.Ill. Sept. 29, 2016) ("Plaintiff only received the Subject Faxes…Plaintiff nevertheless seeks to certify a class containing recipients of 18 other messages he did not receive. This is untenable."). Plaintiffs fail to meet their burden under the typicality requirement of Rule 23 that is subject to what must be this Court's rigorous analysis.

### 4. Adequacy cannot be established.

Rule 23 requires Plaintiffs and their attorneys "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to be adequate representatives, Plaintiffs cannot be subject to a defense that could not be sustained against other class members. *CE Design Ltd.*, 637 F.3d at 725; *see also J.H. Cohn & Co.*, 628 F.2d at 999 ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may…bring into question the adequacy of the named plaintiff[.]" [citation omitted]). Similarly, Plaintiffs cannot be subject to a lack of credibility concerning whether Plaintiffs "invited or permitted the fax advertisements about which [they] now complain[]." *Id.* In determining adequacy, the Court must "ensure that there is no inconsistency between the named parties and the class they represent." *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689).

Plaintiffs' credibility is called into question by (1) the fact that they raced to the courthouse after receiving the Faxes at Issue the evidence shows to be solicited, (2) the content of the Ring Central Account showing Plaintiffs failed to inform the Court they received a

24

telephone call <u>prior</u> to purportedly receiving the Faxes at Issue, (3) the testimony of MPP, and (4) the personalized nature of the Faxes at Issue, all of which show Plaintiffs' invitation and permission to receive the Faxes at Issue only to file a lawsuit less than 40 days thereafter on the basis of an unlawful interpretation of a rule relating to a supposed lack of opt-out notice on the solicited Faxes at Issue. In essence, Plaintiffs have sought to create their own claim and damages, alleged to be the deprivation of "paper and ink or toner and the use of its fax machine" along with the "time" and "labor" associated with reviewing the Faxes as well as the "wear and tear" on Plaintiffs' fax machine (Dkt. 1 at ¶2), only after these Plaintiffs provided a contact name and their fax information to MPP for the express purpose of receiving the Faxes at Issue. Such a manufactured and contrived "claim" should not and must not be rewarded and most seriously calls into question the credibility of Plaintiffs to act in the best interest of the putative class as opposed to their own selfish, manufactured, and manipulative interests. Further, because Plaintiffs' actions and conduct have created multiple defenses peculiar to Plaintiffs and/or a subset of the putative class (*see* Section III(3)(D), *supra*), Plaintiffs are not adequate representatives should this Court determine class treatment is somehow appropriate and possible in this action.

### E. Plaintiff Cannot Satisfy Rule 23(b)(3)

#### 1. Predominance and Superiority cannot be satisfied where individual issues predominate and the case is unmanageable.

The Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "[T]he predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Amchem Prods., Inc. v.* Windsor, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Predominance does not exist where the Court "cannot delineate the population of the

class without making detailed, individual-specific determinations[.]" *G.M Signs, Inc.*, 2011 WL 248511, at *7. Predominance requires common evidence to prove the class claims. *See Messner v. Northshore University Health System*, 669 F.3d 802, 815 (7th Cir. 2012) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and not a "common question."); *see also Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) ("[P]laintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and…district courts must only certify class actions filed under the TCPA when such a theory has been advanced."). The Court must find that "a class action is superior to other available methods for failure and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where individual issues predominate, class certification is "usually not a superior method for resolving the controversy, since management of such issues by a court will not be efficient." *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 519 (N.D.Ill. 2008)

As has been shown, this Court cannot define a class of *unknown* persons who received *unknown* faxes from *someone* without making detailed, individual-specific determinations. Accordingly, individual issues predominate. Plaintiffs' argument that the question of "[w]hether Exhibits A-C are advertisements" predominates over "any questions affecting only individual class members" (Dkt. 111 at p.7) ignores that which is apparent: Plaintiffs have not presented this Court with any generalized evidence to establish any putative class member received "Exhibits A-C" other than Jessica, on behalf of Plaintiffs, and Gabby, on behalf of Inspe Association, Ltd., who the evidence shows requested Exhibits A-C, respectively, which removes Plaintiffs supposed "claims" from the reach of a potential TCPA violation *ab initio*. Rather,

Plaintiffs merely present this Court an unsupported, speculative theory combined with a "report" of a supposed "expert" who did not even realize the Ring Central Records show Plaintiffs and the majority of the businesses reflected on the "returned merchant applications" received telephone calls <u>prior</u> to receiving *something*, which is consistent with the testimony of MPP, and is the death knell of Plaintiffs manufactured claims. On the back of Plaintiffs' supposed "expert" opinion that unknown faxes were blasted from the Ring Central Account containing 38 different fax numbers registered to "Merchant Services" that multiple companies use, Plaintiffs make the illogical leap that every fax sent from any of the multiple different fax numbers used by multiple companies was "<u>Exhibit A-C</u>." To even attempt to consider this illogical leap made by Plaintiffs, this Court would have to engage in an individualized inquiry of each unknown putative class member to determine: if such unknown class member even received a fax from MPP in the form of "<u>Exhibits A-C</u>" only to then seek to determine if such putative class member invited or permitted MPP to send "<u>Exhibits A-C</u>" via fax as testified to by MPP and supported by the Ring Central Records. Plaintiffs simply fail to produce any common evidence that predominates over individual inquiries among the putative class members.

Similarly, Plaintiffs claim of a common question of "[w]hether NAB is liable for the faxes sent by MPP" predominates over "any question affecting only individual class members" (Dkt. 111 at p.7), incorrectly assumes that *any* fax sent from *any* of the multiple fax numbers assigned to the Ring Central Account registered to "Merchant Services" that multiple companies have access to and use is a fax sent *by* MPP promoting the goods and services of NAB. Plaintiffs present zero generalized evidence to support such an unrealistic assumption; particularly as Plaintiffs willingly concede "[t]he RingCentral records <u>do not identify the documents that were faxed</u>." (Dkt. 111 at p.6) (emphasis added). Nonetheless, Plaintiffs seek to argue to the Court that

27

because *someone* faxed *something* to the businesses who "returned merchant applications" on *some* of the Class Period dates, *everything* that was faxed from *any* of the multiple numbers registered to "Merchant Services" on *every* Class Period date was faxed by MPP on behalf of NAB promoting its goods and services. Plaintiffs' speculative argument neither meets Plaintiffs' burden nor withstands the requisite rigorous analysis; particularly as individualized inquiries persist and predominate.

## IV. CONCLUSION

For the foregoing reasons, North American Bancard, LLC respectfully requests this Court deny Plaintiffs' speculative, at best, Amended Motion for Class Certification, and for such other and further relief in favor of NAB.

Dated: April 7, 2017

Respectfully submitted,

*/s/ Beth-Ann E. Krimsky*
**GREENSPOON MARDER, P.A.**
Beth-Ann E. Krimsky, Esq.
Fla. Bar. No. 968412
beth-ann.krimsky@gmlaw.com
*Pro Hac Vice Admission*
Lawren A. Zann, Esq.
Fla. Bar No. 42997
lawren.zann@gmlaw.com
*Pro Hac Vice Admission*
200 East Broward Blvd, Suite 1800
Fort Lauderdale, FL 33309
Tel: (954) 527-2427
Fax: (954) 333-4027

-and-

**TABET DIVITO & ROTHSTEIN, LLC**
Timothy A. Hudson
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
Tel: (9312) 762-9450
Fax: (312) 762-9451
thudson@tdrlawfirm.com
*Attorneys for Defendant North American*
*Bancard, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this April 7, 2017, I electronically filed the foregoing Response in Opposition with the Clerk of Court by using the court's CM/ECF system. I also certify that the foregoing Motion is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Beth-Ann E. Krimsky*
Beth-Ann E. Krimsky