**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WEST LOOP CHIROPRACTIC | ) | |
| & SPORTS INJURY CENTER, LTD., | ) | |
| and WEST LOOP HEALTH & SPORTS | ) | |
| PERFORMANCE CENTER, LLC, | ) | |
| on behalf of plaintiffs and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiffs, | ) | 16 C 5856 |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH AMERICAN BANCARD, LLC, | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
<u>AMENDED MOTION FOR CLASS CERTIFICATION</u>**

Daniel A. Edelman
Cathleen M. Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION……………………………………………………………...……..……….. 1

I.  DEFENDANT HAS NOT PRODUCED ANY COMPETENT,
    NON-HEARSAY EVIDENCE OF CONSENT ……………….……..……… 4

    A.  The NAB Faxes Are Unsolicited …………………………………….…… 4

    B.  Consent, If Any, Obtained by MPP's Agents
        Is Not Transferable to NAB …………………………………………..… 5

        1.  Outbound Call Record to Plaintiffs Predates NAB Junk Faxing ………. 6

        2.  Expert Report of Biggerstaff Negates Any Defense of Consent...……... 8

        3.  Personalization on Faxes Is Evidence of Aged List, Not Consent…...… 8

        4.  Interest in the Content of the Fax Does Not Indicate Consent ……...…. 9

    C.  Fax Transmissions Using the RingCentral Service …………................... 10

II. WHETHER OPT-OUT NOTICES ARE REQUIRED
    IS IRRELEVANT TO CLASS CERTIFICATION ……………………….…..... 10

III. PLAINTIFFS HAVE STANDING …………………………………....……… 11

    A.  NAB Has No Competent, Non-Hearsay Evidence of Consent …………....... 11

    B.  Consent, If Any, Is Not Transferable …………………..……………….…. 12

IV. THE CLASS IS ASCERTAINABLE …………………………………….…….. 13

    A.  The NAB Advertisements Are Identifiable ………………………………. 13

    B.  NAB Had Knowledge of and Approved What Was Faxed………………... 15

    C.  RingCentral Records Evidence █████ Faxes Sent …………………….. 15

    D.  Class Period is Definite and Ascertainable ………………………….……. 16

V.  PLAINTIFFS HAVE SATISFIED RULE 23 REQUIREMENTS …………...…… 18

    A.  Plaintiffs Have Demonstrated Numerosity…………………………….…… 18

    B.  Plaintiffs Have Demonstrated Commonality…………………………….…… 18

**C.**     **Typicality is Satisfied** …………………………………………….…….... 19

**D.**     **Plaintiffs Have Satisfied the Adequacy Requirement** …….………………. 20

**E.**     **Rule 23(b)(3) Requirements Are Satisfied** …………….…………….…… 21

**VI.**     **CLASS CERTIFICATION DOES NOT CREATE PRESSURE TO SETTLE** ..... 22

**VII.**     **CONCLUSION** …………………………………………….…….…………....… 23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Baird v. Sabre, Inc.*,
    636 Fed.Appx 715 (9th Cir. 2016) ............................................................................. 13

*Bais Yaakov of Spring Valley v. Federal Communications Commission*,
    14-1234, 2017 WL 1192909 (D.C. Cir. March 31, 2017).................................................... 3, 10

*Bridging Communities v. Top Flite Financial*,
    843 F.3d 1119 (6th Cir. 2016)........................................................................................ 22

*Brodsky v. HumanaDental Insurance Co.*,
    10 C 3233, 2016 WL 5476233 (N.D. Ill. Sept. 29, 2016)...................................................... 20

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*,
    259 F.R.D. 135 (N.D. Ill. 2009)...................................................................................... 16

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011)......................................................................................... 21

*Chapman v. Wagener Equities, Inc.*,
    09 C 7299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ........................................ 13, 14, 16, 18

*Compressor Engineering Corp. v. Thomas*,
    10-10059, 2016 WL 7473448 (E.D. Mich. Dec. 29, 2016) .................................................... 19

*Dubin v. Miller*,
    132 F.R.D. 269 (D. Colo. 1990)..................................................................................... 21

*G.M. Sign, Inc. v. Brink's Mfg. Co.*,
    09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011)................................................... 11, 12

*Holtzman v. Turza*,
    08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) ...................................................... 16

*Holtzman v. Turza*,
    728 F.3d 682 (7th Cir. 2013).................................................................................... 3, 10

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998)........................................................................................ 19

*Mey v. Patiot Payment Group, LLC and North American Bancard, LLC,*
    5:15-cv-27 (N.D.W.Va.) ................................................................................ 23

*Muro v. Target Corp.,*
    580 F.3d 485 (7th Cir. 2009) ...................................................................... 20

*Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC,*
    12 C 5105, 2016 WL 5390952 (N.D. Ill. Sept. 27, 2016) .................... 12, 19

*Physicians Healthsource, Inc. v. Stryker Sales Corp.,*
    *12-CV-729,* 2013 WL 11326540 (W.D. Mich. Dec. 11, 2013) ................... 9

*Physicians Healthsource, Inc. v. Stryker Sales Corp.,*
    65 F.Supp. 3d 482 (W.D. Mich. 2014) ..................................................... 12

*In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,*
    CG Docket Nos. 02-278, 05-338, 21 FCC Rcd 3787 (April 6, 2006) ........................... 4, 12, 19

*Savanna Group, Inc. v. Trynex, Inc.,*
    10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) .............................. 16

*Thrasher-Lyon v. Ill. Farmers Ins. Co.,*
    861 F.Supp.2d 898 (N.D. Ill. 2012) ...................................................... 4, 7

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
    208 F.3d 288 (1st Cir. 2000) .................................................................. 22

**Statutes**

47 U.S.C. §227 ...................................................................................... 4, 16, 21

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... 1
Fed. R. Civ. P. 26 .......................................................................................... 7

**Regulations**

47 C.F.R. § 64.1200 ............................................................................ 10, 12, 21

**Legislative Materials**

U.S. House Rep. No. 102-317, 102nd Cong., 1st Session (1991) ................. 5
Sen. Rep. No. 102-178, 102nd Cong., 1st Session (1991) ........................... 5

Plaintiffs West Loop Chiropractic & Sports Injury Center, Ltd. and West Loop Health & Sports Performance Center, LLC (collectively, "Plaintiffs") respectfully submit this reply in support of their amended motion for class certification.

Defendant North American Bancard, LLC ("Defendant" or "NAB") claims that plaintiffs have failed to meet the Fed. R. Civ. P. 23 requirements. Defendants' arguments fail factually and as a matter of law as discussed further below.

A summary of defendant's speculative, hollow, and illogical arguments and plaintiffs' factual and reasoned responses (in bold) follows:

- Class members are unknown and received unknown faxes. **The RingCentral records identify ██████ fax transmissions to specific fax numbers on dates defined in the Class Period.[1] The expert report of Robert Biggerstaff ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ (Dkt. No. 109, ¶16) ████████████████████████████ ("MPP") ████████████████ ████████████████████████████████ (Dkt. No. 104, Dep. Krizsan, 40:17; Ex. 25, 34) The application referred to is the NAB merchant processing application. Plaintiffs produced evidence of what was sent on the days identified in the Class Period. Defendant concedes that the NAB merchant processing application was sent by fax.**

- Plaintiffs provided their fax number to MPP on March 22, 2016 for the express purpose of receiving NAB's merchant processing application. **Defendant has no competent, non-hearsay evidence of consent. The testimony of Mr. Krizsan ████████ ████████████████████████████████████████████████████████ ████████████████████████ (Dkt. No. 104, Dep. Krizsan, 134:16-17) Plaintiffs' affidavit provides that they have not consented to receiving advertising faxes from NAB. (Dkt. No. 110, Ex. S)**

- Plaintiffs selectively rely upon 2 solicited facsimiles to assert a nationwide class. **There is evidence of 2 NAB faxes sent to Plaintiffs, and those faxes are attached to Plaintiffs' complaint. (Dkt. No. 1, Exs. A-B) Mr. Krizsan testified ████████████████**

---

[1] Defendant states that Plaintiffs have not provided exemplar NAB junk faxes sent on April 28 or August 11, 2016. Plaintiffs agree and do not oppose defendant's request to remove those days from the Class Period, which reduces the class size to ██████.

██████████████████████████████ **(*Dkt. No. 104*, Dep. Krizsan, 134:16-17)
Defendant has no competent, non-hearsay evidence of what was sent by fax or said
to plaintiffs in the telephone call on March 22, 2016. Notably, defendant opposed a
discovery motion and objected to Plaintiffs' discovery requests for any NAB faxes
sent during any time period except in April, 2016. (*Dkt. Nos. 53, 65, 75, 79*)**

- Plaintiffs received a fax transmission 3 minutes after Plaintiffs' office provided MPP
  permission to send fax transmissions. **Defendant repeatedly references "3 minutes"
  through its response but it has nothing to do with the NAB faxes here. As set forth
  above, there is no competent, non-hearsay evidence of consent "3 minutes" before
  any NAB facsimile was sent.** ██████████████████████ **(*Dkt. No.
  104*, Dep. Krizsan, 134:16-17)**

- Plaintiffs have withheld key evidence of a call to Plaintiffs from the RingCentral account.
  **Defendant is a storyteller.** ██████████████████████████████
  ███████████████████████████████████████████ **(*Dkt. No.
  110*, p.9)** ████████████████████████████ **Defendant knows Mr.
  Krizsan's testimony is hearsay so instead of resolving the evidentiary problem,**
  ██████████████████████████████████████████████████████████
  ██████████████████████████ **(*Dkt. No. 121*) No "key
  evidence" has been withheld. There is no evidence that the alleged call on March 22,
  2016 was on behalf of NAB. A record of a call alone is insufficient to demonstrate
  consent.**

- Personalized faxes sent to Plaintiffs and INSPE indicate consent. **The expert report of
  Robert Biggerstaff provides** ██████████████████████████████████
  ██████████████████████████████████████████████████████████
  ██████████████████████████████████████████████████████████
  ████████████████████████████████████████ **(*Dkt. No.
  109*, Biggerstaff Report, ¶19)** ██████████████████████
  ██████████████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████ *Id.* at ¶2. **Plaintiffs also offer evidence of
  dated addresses on the junk faxes sent to INSPE and Dr. Matus. (*Dkt. No. 110*, <u>Ex.
  C</u>; <u>Exhibit V</u>). Defendant has no evidence of consent or EBR.**

- Plaintiffs know the business practice of MPP consists of calling businesses and receiving
  express permission prior to sending any faxes. ██████████████████████
  ██████████████████████████████████████████████████████████
  ██████████████████ **(*Dkt. No. 104*, Dep. Krizsan, 28:11-19, 38:8-41:25)
  This is hearsay. Defendant cannot rely on it** █████████████████████
  ██████████████████████ **Defendant has no evidence of consent it obtained
  or of an EBR it had with any of the fax recipients.**

- Plaintiffs rely on unlawful and inapplicable rules and regulations of the FCC that required fax advertisements sent with the recipient's permission to contain an opt-out notice. ***Bais Yaakov of Spring Valley v. Federal Communications Commission*, 14-1234, 2017 WL 1192909 (D.C. Cir. March 31, 2017), is relevant only if the faxes are solicited. Defendant has not provided <u>*any*</u> evidence of consent it obtained or an EBR it had with <u>*any*</u> of the NAB fax recipients. (*Dkt. No. 110*, <u>Exs. R, U</u> - Def. Resp. to Doc. Req. 2, 28 and Supp. Resp. to Interr. 14-15; *Dkt. No. 65*, Defendant did not produce any responsive documents to Doc. Req. 28) Also, *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013), is still controlling precedent in this Circuit.**

- There are thirty-nine different fax numbers on MPP's Ring Central account. **The high volume of fax numbers strongly evidences an organized fax broadcasting program, rather than occasional or sporadic marketing.**

- Plaintiffs' expert is unable to opine on the content of the faxes sent. **The RingCentral records produced in response to plaintiffs' subpoena did not include images of what faxes were sent. (*Dkt. No. 110*, <u>Ex. P</u>, RingCentral Declaration)** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **(*Dkt. No. 109*, ¶16). Plaintiffs identified the content of the NAB faxes sent by MPP.**

- Multiple fax lines were used by MPP in sending out NAB faxes. **This argument is a red herring. RingCentral, like other large-scale fax broadcast service providers, transmits faxes through high-capacity telecommunications lines and via the internet. Accordingly, outbound faxes are not associated with any one particular phone circuit but rather use any available telecom circuit and the user's account assigns a particular fax number for the transmission based on the connection that is available at the time the fax is sent.**

-  **▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Dkt. No. 121*) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Defendant simply has no evidence of consent or an EBR with plaintiffs or any other putative class member.**

- NAB did not approve the fax cover sheet prepared by MPP. **Defendant's characterization of Mr. Krizsan's testimony is fanciful. In the regular course of** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **(*Dkt. No. 104*, Dep. Krizsan, 63:25-64:5)** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. at 71:6-8.

- Class Period is random and based on speculation. **Plaintiffs have selected the dates in the Class Period based on: (a) documents that were sent by fax; (b) the testimony of Mr. Krizsan; (c) the RingCentral records; and (d) the expert report of Robert Biggerstaff. Plaintiffs provided evidence of what was sent on the dates set forth in the Class Period based on documents that were sent by fax.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **(Dkt. No. 104**, 40:17; 134:16-17) **The RingCentral records show that** ▮▮▮▮ **faxes were sent on the days in the Class Period.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **(Dkt. No. 109**, ¶19)

## I.    DEFENDANT HAS NOT PRODUCED ANY COMPETENT, NON-HEARSAY EVIDENCE OF CONSENT

### A.    The NAB Faxes Are Unsolicited

The Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227, prohibits the use of a telephone facsimile machine, computer, or other device to send an advertisement to a telephone facsimile machine, unless the sender obtains the consent of the recipient or has an "established business relationship" ("EBR") with the recipient. The FCC has determined that "a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission." *In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278; CG Docket No. 05-338, FCC Release 06-42, 21 FCC Rcd 3787, 3812 (April 6, 2006).

Defendant has the burden of proving consent or EBR. *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F.Supp.2d 898, 905 (N.D. Ill. 2012). Defendant does not dispute that <u>it</u> did not obtain prior express permission from and did not have an EBR with any of the class members. Indeed, in response to discovery requests for documents showing evidence of consent or EBR with plaintiffs and to support its affirmative defense of consent or EBR, it produced <u>*no*</u> documents or

other evidence. (*Dkt. No. 110*, <u>Ex. R, U</u> - Def. Resp. to Doc. Req. 2, 28[2] and Supp. Resp. to. Interr. 14-15) The FCC requires a sender, such as NAB, to have information to document consent or an EBR.  The House Report on the TCPA discusses the phrase "prior express invitation or permission" and makes clear that advertisers have a duty to "establish specific procedures for obtaining prior permission and maintaining appropriate documentation with respect to such permission." U.S. House Rep. No. 102-317, at 13 [102nd Cong., 1st Sess. 1991]. This responsibility "is the minimum necessary to protect unwilling recipients from receiving fax messages that are detrimental to the owner's uses of his or her fax machine." Sen. Rep. No. 102-178, at 8 [102nd Cong., 1st Sess. 1991], 1991 U.S.Code Cong. & Admin.News 1968].  Yet, without any non-hearsay evidence of consent, NAB insists that class certification should be denied because "consent" exists.

### B.    Consent, If Any, Obtained by MPP's Agents Is Not Transferable to NAB

Defendant contends that any consent obtained by its agent, MPP is transferrable to it. Defendant relies on the testimony of Sandor Krizsan, ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ (*Dkt. No. 104,* Dep. Krizsan, 28:11-19, 38:8-41:25)  Defendant contends that evidence of consent is found primarily in the outbound phone call records produced by RingCentral.

---

[2]  *Dkt. No. 65*, Defendant did not produce any responsive documents to Doc. Req. 28.

      1.    <u>Outbound Call Record to Plaintiffs Predates NAB Junk Faxing</u>

NAB argues that plaintiffs have withheld evidence by not referencing the RingCentral records of an outbound call and fax to plaintiffs on March 22, 2016 and an outbound call to plaintiffs on May 23, 2016.  (*Dkt. No. 119*, pp. 1, 2, 8) It is defendant's burden to prove consent, not plaintiffs' burden to disprove consent exists.[3]  Defendant has not met its burden.

While the RingCentral phone records may demonstrate some calls were made in advance of faxes being sent, there is no competent, non-hearsay evidence of consent. ███████████ █████████████████████  Neither Mr. Krizsan, nor NAB have identified or obtained testimony from the person(s) who allegedly obtained consent. Defendant also concedes that MPP agents used the Ring Central account to make phone calls on behalf of other companies, besides NAB.

In addition, ████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████  (*Dkt. No. 121*, Zann Declaration, Ex. 2, 4, 5, and 8)████████████████████████████████ ████████████████████  A record of a call of unknown content on behalf of an unknown person is insufficient to demonstrate consent.

Defendant has not provided any documents or testimony to evidence a NAB fax sent to plaintiffs on March 22, 2016, unlike what has been produced for all other days during the Class

---

[3] Plaintiffs did not withhold evidence.  Plaintiffs reference in their opening brief ████████ █████████████████████████████████████████████████████ ██████████████████ (*Dkt. No. 110*, p. 9) █████████████ █████████████████████████████████ (*Dkt. No. 104*, Ex. 34)

Period. Notably, defendant's footnote 2 on page 2 of its Response, states "Plaintiffs received a fax transmission from the Ring Central Account" without any indication of what was sent or that the fax transmission was a NAB fax.  *(Dkt. No. 119)*

Defendant has also previously opposed and objected to Plaintiffs' discovery requests beyond April, 2016 because they went beyond "Exhibits A and B" to the complaint arguing that the discovery sought "concern[ed] facsimiles that Plaintiffs do not even allege to have received." *(Dkt. No. 75*; See also *Dkt. Nos. 53, 65, 96).*  Defendant's abrupt twist on this issue is telling and deceptive.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

*(Id*., Ex. 34)[5] Defendant has not shown that the call to plaintiffs on March 22, 2016 was made on behalf of NAB.[6]  Defendant makes the unsubstantiated leap that the call and fax on March 22,

---

[4]  Pursuant to Plaintiffs' ongoing duty to supplement in accordance with Fed. R. Civ. P. 26, Plaintiffs do not have and did not produce any document evidencing a fax transmission from NAB on March 22, 2016.

[5]  ████████████████████████████████████████ Exhibit Y.

[6]  Any calls made to plaintiffs *after* Exhibits A-B were sent, such as any alleged call on May 23, 2016, are clearly not evidence of prior express consent.

2016 were related to NAB when there is no other evidence of calls or faxes on behalf of NAB on that date.

### 2. Expert Report of Biggerstaff Negates Any Defense of Consent

NAB's attempt to create plausible deniability that the faxes were solicited by relying on the RingCentral records of outbound phone calls fails when one considers the expert report of Robert Biggerstaff. (*Dkt. No. 109*) ███████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████

Regardless of whether calls were made, NAB has no non-hearsay evidence to support its assertions. Instead, the RingCentral call records indisputably show: (a) █████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ (*Dkt. No. 109*,

Biggerstaff Report, ¶¶ 18, 19, 24, 49) The FCC places the burden of proving consent or an EBR on the sender, and NAB has submitted <u>no</u> evidence of consent or an EBR.

### 3. Personalization on Faxes is Evidence of Aged List, Not Consent

Next, defendant argues that the personalized nature of the faxes provides additional support that the NAB faxes were sent with consent. Defendant relies on the names "Jessica" on <u>Exhibits A-B</u> and "Gabby" on <u>Exhibit C</u> to demonstrate personalization. ████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████ (*Dkt. No. 104*, Dep. Krizsan, 69:20-70:24)

Plaintiffs submit that the "personalized nature" of the faxes demonstrate that MPP was using an outdated list rather than obtaining current information ████████████████ Plaintiffs set

forth in their opening brief that the address listed on the fax sent to INSPE on Exhibit C is outdated by 3 years. In fact, the building at the address on Madison Street in Chicago identified in Exhibit C, was converted into the Gray Hotel in 2014. There is a Chicago Tribune article discussing the sale and renovation of the landmark building in Exhibit W. Plaintiffs recently served another supplement to their initial disclosures showing another address disparity. (Exhibit V) Dr. Matus has not had a business office at the address identified on the fax in approximately 3 years. These facts, coupled with the report of Robert Biggerstaff, belie any argument ███████████████

████████████████████████████████████████████████████████████

███████████████████

4.   Interest in the Content of the Fax Does Not Indicate Consent

Defendant argues that the fact that merchant applications were returned indicates consent to receive fax advertisements. Defendant's proposed methodology to ascertain consent is flawed. Interest in the content of the fax does not indicate consent. "Unsolicited faxes that do not fall within the statutory exceptions are prohibited by the TCPA regardless of whether practitioners welcome the products they are promoting." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 12-CV-729, 2013 WL 11326540, at *3 (W.D. Mich. Dec. 11, 2013). While 23 persons may have been interested in NAB's goods and services, there are over ████ who were not, which further supports the unsolicited nature of the faxes sent advertising NAB's goods and services.

Defendant argues that class certification should be denied because putative class members who consented to the receipt of the NAB junk faxes do not have a valid TCPA claim. This argument attempts to "put the cart before the horse." Consent in this case is a non-issue because NAB has failed to meet its burden of proof.

### C. Fax Transmissions Using the RingCentral Service

Defendant argues that Plaintiffs cannot identify which of MPP's fax numbers sent the NAB junk faxes at issue. This argument is distracting and demonstrates a lack of understanding of how the RingCentral fax service works. RingCentral, like other large-scale fax broadcast service providers, transmits faxes through high-capacity telecommunications lines and via the internet, not over individual landlines. For this reason, outbound faxes are not associated with any one particular phone circuit all the time but rather use any available telecom circuit and the user's account assigns a particular fax number for the transmission of the fax based on the connection that is available at the time the fax is sent, and the configuration of the system.

Defendant concedes that multiple fax lines were used by MPP to transmit the NAB faxes. Use of large-scale fax broadcast services further supports plaintiffs' position that the faxes were sent as part of an organized, mass fax blast program and not in response to a request to receive an advertisement by fax.

## II. WHETHER OPT-OUT NOTICES ARE REQUIRED IS IRRELEVANT TO CLASS CERTIFICATION

The D.C. Circuit recently held that a compliant opt-out notice as set forth in 47 C.F.R. § 64.1200(a)(4)(iii)(B), is not required on solicited fax advertisements. *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 14-1234, 2017 WL 1192909 (D.C. Cir. March 31, 2017).[7] Plaintiffs submit that *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) is still controlling precedent in this Circuit. "Because Top of Mind omitted opt-out notices, it does not matter which recipients consented or had an established business relation with Turza."

---

[7] Plaintiffs' counsel have been informed that the filing of an *en banc* petition is anticipated by Bais Yaakov of Spring Valley.

Regardless, NAB has not provided any evidence of consent it obtained or an EBR it had with any of the NAB fax recipients. *Cf. G.M. Sign, Inc. v. Brink's Mfg. Co.*, 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011)(Class was not certified in case where defendant provided multiple affidavits evidencing that it obtained consent from plaintiff and other non-pre-existing customers as well as provided evidence of pre-existing customers prior to the time the faxes were sent.). If NAB did not obtain consent, the D.C. Circuit's decision in *Bais Yaakov* does not help it. Moreover, Biggerstaff's report ████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████ (*Dkt. 109*, Biggerstaff Report, ¶19) There is simply insufficient evidence to support any assertion of consent.

## III.    PLAINTIFFS HAVE STANDING

Defendant argues that plaintiffs do not have standing because they consented to receive the NAB faxes. Further, defendant argues that since the faxes sent to plaintiffs were solicited they did not need to have opt-out notices on them.

### A.    NAB Has No Competent, Non-Hearsay Evidence of Consent

First, defendant's reliance on permission from the plaintiffs is flawed as set forth above in Section I, *supra*, as any "consent" obtained ████████████████████████████████ █████████████████     Second, defendant has no competent, non-hearsay evidence of consent from plaintiffs or anyone else. Third, plaintiffs' testimony contradicts defendant's assertion of consent. (*Dkt. No. 110*, Ex. S) Fourth, the expert report of Robert Biggerstaff ███████████████████████ █████████████████████████████████████████ (*Dkt. No. 109*, Biggerstaff Report, ¶19) █████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id*. at ¶16.

## B.    Consent, If Any, Is Not Transferable

NAB also argues that any consent obtained by its agent, MPP, is transferable. Not surprisingly, defendant fails to cite any junk fax case to support its position. The FCC Regulations governing fax advertisements provide that the sender must obtain prior express permission from the recipient defined as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(10).  In *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3811-12, ¶¶ 46, the FCC states:

> In the absence of an EBR, the sender must obtain the prior express invitation or permission from the consumer before sending the facsimile advertisement. . . . . Senders who chose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified.

NAB's implied and indirect consent fails as a matter of law.  *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp. 3d 482, 485, 497 (W.D. Mich. 2014) (No direct evidence of consent where defendant argued that physician provided fax number to the American Medical Association which subsequently licensed the data to third parties).

In *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 12 C 5105, 2016 WL 5390952 (N.D. Ill. Sept. 27, 2016), defendant entered into an asset purchase agreement with another company, Allscripts.  Defendant used the fax numbers in Allscript's customer database to send junk faxes.  Allscripts had a policy to obtain permission prior to sending fax advertisements. Plaintiff was a former customer of Allscripts and defendant argued that the consent obtained by Allscripts extended to it.  Defendant argued that fax numbers appeared in

12

the Allscript's database if the customer voluntarily provided their permission to fax. The court

was not persuaded by defendant's argument that consent transferred to it stating, "Defendant's

argument lacks specificity in that it does not explain the circumstances in which consent was

obtained." *Id*. at 8. In granting the plaintiff's motion for class certification, the court held:

> From the information provided by Defendants, it appears that Allscripts engaged in a
> "standardized course of conduct" in obtaining the consent, if consent was obtained. *See*
> *Hinman*, 545 F.Supp.2d at 806. It may turn out that "[f]rom the customer's perspective,
> there was little – if any – difference between Allscripts' MSG and A-S Medication."
> [Def. Resp. At 21, ECF No. 171]; *see, e.g. Baird v. Sabre, Inc*., 636 Fed.Appx 715, 716
> (9th Cir. 2016) (finding that the plaintiff had consented to receive text message from the
> airline's vendor when the vendor sent a text message regarding her reservation with the
> airline). Yet, this question is properly reserved for the factfinder to determine class-wide
> when Defendants will have the opportunity to provide evidence regarding the
> circumstances under which Allscripts' customers provided their fax numbers.

*Id*. NAB's attempt to rely on "consent" purportedly obtained by MPP fails.

## IV. THE CLASS IS ASCERTAINABLE

Defendant argues that the motion for class certification should be denied because a class

is not ascertainable on the grounds that: (a) some recipients consented to receive a NAB junk fax

or have an EBR with NAB; and (b) the class members were sent faxes in forms other than

Exhibits A-C. "The class definition requires that class members be reasonably ascertainable not

that they demonstrate a reasonable likelihood of success on the merits." *Chapman v. Wagener*

*Equities, Inc.*, 09 C 7299, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014). Plaintiffs do not

define the class based on the design of the advertisements.

### A. The NAB Advertisements Are Identifiable

Defendant concedes that MPP sent its merchant processing application by fax. Plaintiffs

have submitted examples of the designs of the junk faxes MPP sent on behalf of NAB in the

form of: (a) Exhibits A-C; (b) ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████ (*Dkt. No. 105*, NAB 160-275); (c) ████████████████████████████

████████████████████████████████████████████████████████████████████████

(*Dkt. No. 104*, Ex. 34; <u>Exhibit Y</u>); (d) the testimony of Mr. Krizsan ████████████████

████████████████████████████████████████)[8], (e) MPP's response to plaintiffs'

subpoena duces tecum, *Id.* at Exs. 25, 34,[9] and (f) an additional exemplar NAB junk fax found on

the internet at <u>www.reportjunkfaxspam.com/junkfaxes</u>. (<u>Exhibit X</u>)

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ Plaintiffs identified the content of faxes sent on specific dates

████████████████████████████

---

[8] *Dkt. No. 104*, Dep. Krizsan, 40:17; *See also,* ████████████████████████

[9] Plaintiffs' subpoena and MPP's response (without documents) are attached hereto as <u>Exhibit AA</u>.

[10] <u>Exhibit Z</u> ████████████████████████████████████████████
████████████████████████████

in the Class Period.  Additionally, the report of Robert Biggerstaff ████████████████

████████████████████████████  There is a fair inference that the examples

provided represent what was sent by fax on those dates.

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  A class is ascertainable on the select days set forth in the Class Period based on

examples of what was sent on those days.[11]

### B.    NAB Had Knowledge of and Approved What Was Faxed

NAB knew about MPP's use of junk faxing to generate business for it.  Remarkably,

NAB takes the position that it did not approve the design of the fax emailed to it by MPP.  This

is outrageous.  ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████  (*Dkt. No. 104*, Dep. Krizsan, 63:25-64:5)  ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  (Exhibit Y)

### C.    RingCentral Records Evidence ████████ Faxes Sent

Defendant argues that plaintiffs assert a class of unknown persons who received unknown

faxes.  Defendant aruges that plaintiffs have to submit proof of what each class member received

---

[11] Defendant states that Plaintiffs have not provided any exemplar NAB junk faxes sent
promoting its goods and services on April 28 or August 11, 2016.  Plaintiffs agree and do not
oppose defendant's request to remove those days from the Class Period.  ██████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

in order to ascertain the class. But NAB's argument is contrary to the law. The TCPA provides that it is unlawful "to use any telephone facsimile machine, computer, or other device to _send_, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). The statute unambiguously prohibits the sending of unsolicited fax advertisements and does not at all refer to receipt. The RingCentral fax transmission records are evidence that ███████ faxes were sent. The RingCentral fax transmission records also provide circumstantial evidence of receipt. *Savanna Group, Inc. v. Trynex, Inc.*, 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013). Moreover, courts have routinely held that records of fax transmissions are sufficient to demonstrate that faxes were sent. *Chapman v. Wagener Equities, Inc.*, 09 C 7299, 2014 WL 540250, at *10-11 (N.D. Ill. Feb. 11, 2014); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 139 (N.D. Ill. 2009); *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909, at *2-3 (N.D. Ill. Oct. 14, 2009). The proposed class is ascertainable.

### D. Class Period is Definite and Ascertainable

Defendant argues that the methodology in defining the Class Period is flawed. The Class Period is based on the dates on the returned merchant applications as well the dates on Exhibits A-C, the testimony of Mr. Krizsan ███████████████████████████████████ ████████████████████████████████ the RingCentral records, and the expert report of Robert Biggerstaff. Plaintiffs cross-referenced the dates and fax numbers on the returned NAB merchant applications with the RingCentral records. Plaintiffs reviewed the fax numbers on the returned merchant applications and searched the RingCentral records for outbound fax transmissions at or near the time the applications were returned to NAB or that had dates that were legible on the returned applications. Robert Biggerstaff's report ██████████████ ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ (*Dkt. No. 109*, Biggerstaff Report, ¶19)

Defendant is correct that most but not all the returned merchant applications in NAB 160-275 (*Dkt. Nos. 105*), have fax transmission headers similar to those on <u>Exhibits A-C</u>. Defendant have identified 5 returned merchant applications that have headers (or do not) that are not similar to <u>Exhibits A-C</u>. ████████████████████████████████

████████████████████████████ The RingCentral records show a fax to this recipient on August 18, 2016 and that date was included in the Class Period. ███████████

████████████████████████████ *Dkt. No. 121*. ████████████████████

████████████████████████ (<u>Exhibit BB</u>, NAB 366-367)[12], and the RingCentral records indicate a fax to this recipient on April 12, 2016, ██████████████████████████ and that date was included in the Class Period.

For the remaining applications referenced, no dates were added to the Class Period. ██████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████ Since there was already evidence of a fax transmission on April 18, no other dates were included in the Class Period from this application. █████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[12] Plaintiffs filed a motion for leave to file NAB 366-367 under seal.

████████████████████████████████████████████████████████████

████ Neither date was included in the Class Period.

## V. PLAINTIFFS HAVE SATISFIED RULE 23 REQUIREMENTS

### A. Plaintiffs Have Demonstrated Numerosity

MPP transmitted ████ faxes on behalf of NAB advertising NAB's goods and services.
These results are consistent with an organized blast faxing program rather than some sporadic
fax advertising endeavor. Defendant attempts to argue that plaintiffs only have evidence of at
most 25 fax advertisements, which is insufficient for numerosity. █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[13] Plaintiffs have satisfied
numerosity.

### B. Plaintiffs Have Demonstrated Commonality

Plaintiffs have satisfied the commonality requirement because MPP sent junk faxes
promoting NAB's goods and services to the class. Whether the faxes constitute "advertisements"
under the TCPA is a question common to all fax recipients. *Chapman v. Wagener Equities, Inc.*,
09 C 7299, 2014 WL 540250, at *6 (N.D. Ill. Feb. 11, 2014).

Defendant attempts to defeat commonality by arguing that personalized faxes, such as
those sent to plaintiffs, indicate consent. Personalized faxes can also indicate use of mail merge
technology and a purchased list. It is defendant's burden to set forth evidence to support its

---

[13] ████████████████████████████████████████████████████████████

affirmative defense of consent. Speculation aside, a name on a fax is not "clear and convincing evidence of the existence of such permission" *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3807 (April 6, 2006).

Commonality is met when "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Based on the information provided by MPP, the issue of consent can be resolved by common evidence (or lack of evidence) on a classwide basis.

Whether any consent obtained by MPP is transferrable to NAB is also a common question that can be answered on a class-wide basis. *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 12 C 5105, 2016 WL 5390952, at *8-9 (N.D. Ill. Sept. 27, 2016). "Whether consent is transferrable is a question common to all class members that can be answered on a class-wide basis and must be answered before the court can address whether individual questions regarding consent exist." *Id.* at 9.

### C.     Typicality Is Satisfied

Defendant argues that plaintiffs' claims are not typical of the claims of the other class members because plaintiffs consented to receive Exhibits A-B. As discussed above, there is no factual basis for these assertions. Defendant also argues that it has unique defenses to plaintiffs' and a certain subset of class members' claims such as waiver, estoppel, failure to mitigate, and double recovery. But defendant's arguments are not persuasive because defendant previously argued that *all* class members consented to receipt of the faxes, so the purported "peculiar" defenses are not unique but rather are aligned with the plaintiffs. *Compressor Engineering Corp. v. Thomas*, 10-10059, 2016 WL 7473448, at *13 (E.D. Mich. Dec. 29, 2016) (Typicality satisfied

where alleged "unique" defense to plaintiff would be a defense common to 95% of the class). Defendant's potential defense of double recovery is untrue – there is one recovery per fax.

Defendant relies on *Brodsky v. HumanaDental Insurance Co.*, 10 C 3233, 2016 WL 5476233 (N.D. Ill. Sept. 29, 2016), to demonstrate typicality cannot be satisfied where the proposed class definition includes designs of faxes other than those plaintiff received, during different time periods than when the faxes were sent to plaintiff. The *Brodsky* court found that the 18 different designs of faxes created a substantial variation in the claims and course of conduct and were not the subject of discovery.

By contrast here, all of the junk faxes were sent by MPP on behalf of NAB on specified days in the Class Period, and were the subject of discovery. ██████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████ Defendant does not suggest what else it could have had sent. Plaintiffs' claim shares the "same essential characteristics as the claims of the class at large.", and typicality is satisfied. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

To the extent defendant has a defense regarding consent, which it does not, the defense would be typical to that of other class members. Hypothetical individual issues are insufficient to prevent class certification; rather, the actual existence of such issues must be shown by evidence.

### D. Plaintiffs Have Satisfied the Adequacy Requirement

Defendant asserts that plaintiffs are not adequate class representatives because they are not credible because the allegedly consented to receive Exhibits A-B and are subject to unique

defenses.  Plaintiffs have already responded to the unique defenses argument in Section V.C., *supra*, and reassert their arguments herein. In addition, plaintiffs reassert their arguments regarding consent set forth in Sections I.A. and II, *supra*.  "'For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members's claims.'" *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) *citing Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990).   Defendant has no competent, non-hearsay evidence of consent from plaintiffs or **any** other putative class member.  Finally, Plaintiffs have selected experienced counsel to represent them in this action.  Plaintiffs have satisfied the adequacy requirements of Rule 23.

### E.      Rule 23(b)(3) Requirements Are Satisfied

Plaintiffs have identified the common questions as:

1.      Whether Exhibits A-C are advertisements as defined by 47 U.S.C. § 227(a)(5) and 47 C.F.R. § 64.1200(f)(1);

2.      Whether NAB is liable for the faxes sent by MPP; and

3.      Whether NAB willfully or knowingly violated the TCPA.

Defendant argues that Plaintiffs cannot satisfy commonality and predominance because plaintiffs have not shown that all the putative class members were sent faxes in the form of Exhibits A-C. Plaintiffs have demonstrated the designs of the NAB advertising faxes the putative class members were sent in Section IV.A., *supra*.  Whether the faxes in the form of Exhibits A-C, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ together with the NAB merchant application, are advertisements, is a question common to all members of the putative class.

In response to plaintiffs' subpoena duces tecum issued to MPP, it responded to a request for "Any and all documents relating to any advertising facsimile transmissions by or on behalf of North American Bancard, LLC." ████████████████████████████████████

████████████████████████████████ (*Dkt. No. 104*, Ex. 34) Plaintiffs also produced evidence of faxes that were sent to it, INSPE and Dr. Matus. (Exhibits C, V; *Dkt. No. 104*, Exs. 25, 34, MPP Resp. to Subpoena Duces Tecum, ¶ 20) Mr. Krizsan also testified in response to the following request to produce, "Any and all marketing materials you, any entity you created, or any entity in which you have an ownership interest, used or created to promote the goods and services of North American Bancard, LLC." ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ (*Dkt. No. 104*, Exs. 25, 34, MPP Resp. to Subpoena Duces Tecum, ¶ 32; Dep. Krizsan, 153: 16-25) There is nothing illogical about what faxes were sent to the putative class members on the days identified during the Class Period.

"[A] possible defense, standing alone, does not automatically defeat predominance." *Bridging Communities v. Top Flite Financial*, 843 F.3d 1119, 1125 (6th Cir. 2016).

Since the answers to the questions identified above will not vary among the class members and predominance is met.

## VI.     CLASS CERTIFICATION DOES NOT CREATE PRESSURE TO SETTLE

NAB argues that class certification should not be granted because it may force a defendant to settle.   Defendant is wrong. "[W]hat might be 'ruinous' to a company of modest size might be merely unpleasant to a behemoth." *Waste Mgmt. Holdings, Inc.  v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000).  NAB is by no means of modest net worth, and in fact, just settled

a TCPA robocall case in excess of $3 million, without certification of a class. *Mey v. Patriot Payment Group, LLC and North American Bancard, LLC*, 5:15-cv-27 (N.D. W.Va.) (*Dkt. No. 122*). NAB argues that in class cases defendants are potentially exposed to greater liability than in individual cases, and for that reason a class should not be certified. This argument is contrary to the public policy behind bringing class actions and under NAB's rationale no class would be certified. Certification of a class does not create pressure for NAB to settle.

## VII.  CONCLUSION

For the foregoing reasons, plaintiffs respectfully request certification of the class defined as:  All persons with fax numbers, who during the Class Period, were sent faxes by or on behalf of defendant North American Bancard, LLC promoting its goods or services for sale.  The Class Period is defined as April 6, 8, 12, 18, 20, 25, 26, 27, May 4, 9, 12, 20, 25, 26, June 8, 23, August 4, 8, 9, 10, 12, 18 and 23, 2016.[14]

Respectfully submitted,

s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Cathleen M. Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

---

[14] Plaintiffs respectfully request to modify two dates set forth in the Class Period, by removing April 28 and August 11, 2016 from the Class Period.

## CERTIFICATE OF SERVICE

I, Heather Kolbus, certify that on April 26, 2017, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF system which caused notice via email to be sent to the following:

Beth-Ann Krimsky - beth-ann.krimsky@gmlaw.com
Lawren A. Zann - lawren.zann@gmlaw.com
Greenspoon Marder, P.A.
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33309

Timothy Hudson - thudson@tdrlawfirm.com
Tabet DiVito & Rothstein LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604

                                        s/ Heather Kolbus
                                        Heather Kolbus

Daniel A. Edelman
Cathleen Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)