IN THR UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEST LOOP CHIROPRACTIC & SPORTS INJURY CENTER, LTD., and WEST LOOP HEALTH & SPORTS PERFORMANCE CENTER, LLC, on behalf of Plaintiffs and the Class Members defined herein, ) ) ) ) ) ) ) | |
| Plaintiffs, ) | 16 C 5856 |
| ) | |
| v. ) ) | Jeffrey T. Gilbert Magistrate Judge |
| NORTH AMERICAN BANCARD, LLC, and JOHN DOES 1-10, ) ) ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

This matter is referred to the Court for a report and recommendation on an Amended Motion for Class Certification [ECF No. 98] filed by Plaintiffs West Loop Chiropractic & Sports Injury Center, Ltd. and West Loop Sports Performance Center, LLC pursuant to Federal Rule of Civil Procedure 23. For the reasons discussed below, the Court recommends that Plaintiffs' Amended Motion for Class Certification be granted.

### I. BACKGROUND

Plaintiffs West Loop Chiropractic & Sports Injury Center, Ltd. and West Loop Sports Performance Center, LLC ("West Loop Plaintiffs") filed this class action after receiving alleged unsolicited advertising facsimiles supposedly sent by or on behalf of Defendant North American Bancard, LLC ("NAB").[1] INSPE Associates, Ltd., a client of West Loop Plaintiffs, also

---

[1] The faxes received by West Loop Plaintiffs are attached as Exhibits A-B to their Memorandum of Law in Support of Amended Motion for Class Certification. [ECF No. 110-1, 110-2.]

1

allegedly received an unsolicited advertising fax sent by or on behalf of NAB.[2] In their complaint, West Loop Plaintiffs allege that NAB violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending the alleged unsolicited faxes advertising NAB's services for processing credit card transactions. The TCPA makes it unlawful to use "any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine. . . ." 47 U.S.C. § 227(b)(1)(C). West Loop Plaintiffs seek an order from the Court that this action may proceed against NAB on behalf of the following class: "All persons with fax numbers, who during the Class Period, were sent faxes by or on behalf of defendant North American Bancard LLC promoting its goods or services or sale." Plaintiffs' Memorandum of Law in Support of Amended Motion for Class Certification, [ECF No. 110, at 1]. The Class Period is defined as April 6, 8, 12, 18, 20, 25, 26, 27, 28, 29, May 4, 9, 12, 20, 25, 26, June 8, 23, August 4, 8, 9, 10, 11, 12, 18 and 23, 2016. *Id.*

NAB is a "merchant services" provider, which supplies merchants with equipment and offers services to process credit card transactions. As part of its marketing efforts, NAB relies on sales agents to generate business from new merchants. Sales agents find new merchants, such as restaurants, doctors, and dentists, who are in need of a provider, like NAB, to process their credit card transactions. Sales agents solicit potential merchants to complete applications on forms created by NAB. The completed forms then are submitted to NAB by the sales agent. Once the applications are approved by NAB, the merchant will receive equipment, if needed, so that it can accept credit card transactions, which will be processed by NAB. The sales agents are compensated for the new merchants they recruit for NAB.

---

[2] The fax received by INSPE is attached as Exhibits C to Plaintiffs' Memorandum of Law in Support of Amended Motion for Class Certification. [ECF No. 110-3.]

On March 2, 2016, NAB entered into an agent agreement with Merchant Payment Processing, Inc. ("MPP") to market NAB's goods and services. NAB's agent agreement with MPP was signed in the name of Kent Harper, who was identified in the agreement as the principal of MPP. MPP was required to use NAB's brand and tradename in its marketing efforts. MPP used fax advertising to promote NAB's goods and services. MPP is not a party to this lawsuit.

## II. LEGAL STANDARD

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979). Class certification is governed by Federal Rule of Civil Procedure 23. *See* FED. R. CIV. P. 23. The decision to certify a class action rests within the discretion of the district court. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Whether a plaintiff has met its burden is measured by the "preponderance of the evidence" standard. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 594 U.S. 338, 350 (2011). The Supreme Court has recognized that sometimes it is necessary for the court to "probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if the trial court is satisfied, after a "rigorous analysis," that the prerequisites of Rule 23(a) have been

3

satisfied. *Id.* at 350-351. In conducting its Rule 23 analysis, however, a court should "not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811. "If there are material factual disputes that *bear on the requirements for class certification*, the court must 'receive evidence if only by affidavit and resolve the disputes before deciding whether to certify the class.'" *Bell*, 800 F.3d at 377 (emphasis in original) (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Thus, the class certification inquiry "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 350-51; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013).

Federal Rule of Civil Procedure Rule 23(a) contains four prerequisites for class certification: (1) numerosity; (2) commonality, (3) typicality; and (4) adequate representation. *See* FED. R. CIV. P. 23(a); *Wal-Mart Stores, Inc.*, 594 U.S. at 349; *Harper v. Sheriff of Cook Co.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "'Failure to meet any of the Rule's requirements precludes class certification.'" *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). If the moving party meets this initial burden, it also must show that the requirements of Rule 23(b)(3) are satisfied. *See Oshana*, 472 F.3d at 513. This means that the party seeking class certification must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fair and efficient adjudication of the controversy [superiority]." FED. R. CIV. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Oshana*, 472 F.3d at 513.

4

As explained more fully below, the Court has engaged in a "rigorous analysis" to evaluate if West Loop Plaintiffs have "affirmatively demonstrate[d]" compliance with the requirements of Rule 23 by a preponderance of the evidence. *Comcast*, 569 U.S. at 33; *Wal-Mart*, 564 U.S. at 350; *Messner*, 669 F.3d at 811. The Court has not presumed something is true merely because one party asserts it to be—a rule that applies equally to both parties' assertions. The volume of exhibits and deposition testimony attached to the briefs shows the parties have gone well beyond the four corners of any pleading to support their respective arguments. The Court has considered all of the evidence submitted, evaluated whether the characterizations of the evidence offered by the parties are supported by the evidence, and given those interpretations appropriate weight.

## III. ANALYSIS

West Loop Plaintiffs seek to certify a class comprised of class members who received facsimiles sent by or on behalf of NAB advertising or promoting its goods and services. The Court notes that Plaintiffs do not specify in their class definition that they seek to certify a class comprised of class members who received <u>unsolicited facsimiles</u> by or on behalf of NAB advertising or promoting its goods and services. However, the case is about whether MPP sent faxes on behalf of NAB to individuals or entities that did not consent to receive such faxes, and it appears that West Loop Plaintiffs intend that only those individuals and entities will share in an eventual class settlement or recovery. For the reasons discussed below, the Court is convinced that West Loop Plaintiffs have satisfied the requirements of Federal Rule 23 by a preponderance of the evidence and recommends that such a class be certified.

### A. West Loop Plaintiffs Have Satisfied the Numerosity Requirement

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Numerosity generally is

5

satisfied by identifying a class containing at least 40 members. *See, e.g., McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643-44 (N.D. Ill. 2002); *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006). West Loop Plaintiffs have identified 57,249 fax transmissions they say potentially were sent by MPP on behalf of NAB advertising its goods and services on the dates within the proposed Class Period. NAB disputes the number of fax transmissions identified by West Loop Plaintiffs as potentially having been sent on its behalf and argues, among other things, that the actual number of potential class members who received faxes sent on behalf of NAB is unknown and those unknown class members also received an unknown number of faxes. In addition, NAB contends that Plaintiffs only have evidence of at most 23 or 25 fax advertisements purportedly sent on behalf of NAB during the Class Period, which is insufficient to meet the numerosity requirement of Rule 23.

West Loop Plaintiffs rely on the report and opinion of their retained expert, Robert Biggerstaff, to assert and support numerosity.[3] Mr. Biggerstaff reviewed records from MPP's RingCentral account which were produced in discovery. The RingCentral records identify 57,249 fax transmissions by MPP to specific telephone numbers on the specific dates defined as the Class Period. Mr. Biggerstaff summarizes the number of fax transmissions sent on each day of the Class Period, and he asserts: "These records are strongly consistent with fax

---

[3] Robert Biggerstaff is a retired engineer with experience in designing databases and computer-based fax programs. He is an expert in TCPA class actions involving junk faxes. West Loop Plaintiffs rely on the opinions of Mr. Biggerstaff, which are included in his expert report, to support their motion for class certification. This type of expert report has been accepted in similar TCPA cases in this district. NAB does not specifically challenge Mr. Biggerstaff's report under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), or Federal Rule of Evidence 702. Other courts in the Northern District of Illinois have considered similar expert reports from Mr. Biggerstaff and concluded that his opinions are sufficiently reliable and admissible for the purpose of a motion for class certification. *See e.g., Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594, 598-99 (N.D. Ill. 2018) (permitting the use of the expert report of Robert Biggerstaff in a TCPA class action involving junk faxes); *Chapman v. Wagener Equities, Inc.*, 2014 WL 540250, at *7-11 (N.D. Ill. Feb. 11, 2014); *Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181, at *3-4 (N.D. Ill. Jan. 4, 2013); *Holtzman v. Turza*, 2009 WL 3334909, at *3 (N.D. Ill. Oct. 14, 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324, at *1 (N.D. Ill. Aug. 20, 2009); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D 135, 139 (N.D. Ill. 2009).

'broadcasting' activity where a template fax image is sent to a list of fax destinations. In such instances, one specimen fax template image will be representative of all the fax transmissions in that broadcast." [ECF No. 109, at ¶ 16.] Further, Mr. Biggerstaff writes: "These data are strongly consistent with fax broadcasting activity where bulk fax transmissions of the same fax template are made to a 'list' of fax numbers rather than made as a timely response to individual requests made by the fax recipients. In particular, the rate at which the error 'No fax device' appears is indicative of the use of an aged list of fax numbers." [ECF No. 109, at ¶ 19.] Mr. Biggerstaff also concludes that the "fax transmissions are made to a 'list' of fax numbers that was 3 or more years old at the time of the fax transmission, rather then made as a timely response to individual requests made by fax recipients." [ECF No. 109, at ¶ 2.]

The Court credits Mr. Biggerstaff's opinion that the data he reviewed is consistent with blast fax broadcasting activity. Mr. Biggerstaff's logical path to that conclusion is clear. It is based on evidence in the record, and it is sound from an intellectual and a common-sense point of view. His analysis strongly suggests there were bulk transmissions of the same fax template made to a list of fax numbers rather than separate and individual fax transmissions sent in response to consent received from individual fax recipients as NAB suggests. Taken at face value, 57,249 fax transmissions certainly satisfy the numerosity requirement of Federal Rule 23(a).

West Loop Plaintiffs' next hurdle is to show that the bulk transmissions were sent by MPP on behalf on NAB. The logical path to that conclusion is not as clear as the path to the conclusion that the faxes received by West Loop Plaintiffs were sent in connection with broadcast fax activity, but the Court finds that Plaintiffs have succeeded in getting over that hurdle as well on the record developed so far in this case. West Loop Plaintiffs rely on the

7

testimony of Sandor Krizsan of MPP to support their claim that the broadcast faxes were sent by MPP on behalf of NAB. Mr. Krizsan testified about the RingCentral account that was in the name of MPP, and he produced documents on behalf of MPP. West Loop Plaintiffs contend that Mr. Krizsan admitted that the numbers that appear on the fax transmissions at issue in this case are RingCentral telephone numbers used by MPP. The faxes on which West Loop Plaintiffs rely are attached as Exhibits A-C to their Memorandum of Law in Support of Amended Motion for Class Certification. *See* [ECF No. 110.] Each fax is a 5-page document, and the first page contains NAB's name, describes NAB's goods and services as a "Limited time offer!" to lower the merchant's rate for processing credit card transactions, offers EMV replacement equipment, and invites the recipient to complete the "attached North American BANCARD Merchant Services agreement." *See* [ECF Nos. 110-1, 110-2, 110-3.] Mr. Krizsan testified that he created page 1 and sent a sample of page 1 to NAB prior to the time the faxes were sent. [Dep. of S. Krizsan, 71:4-10, 134:1-22, 135:1-139:17.] The remaining pages of Exhibits A-C comprise NAB's merchant processing application.

In addition to the fax transmissions received by West Loop Plaintiffs and their client INSPE, West Loop Plaintiffs rely on the completed merchant applications that MPP submitted to NAB to identify the dates on which there is evidence of broadcast fax activity on NAB's behalf. West Loop Plaintiffs explain: "The applications submitted include a double fax transmission header, which indicates that the application was faxed more than once. The merchant's fax number on the merchant processing application was cross-referenced to the RingCentral records on the specific dates noted on the applications. The Class Period is based on the dates on the returned merchant applications as well as other evidence plaintiffs compiled." [ECF No. 110, at 6.] Based on all of this evidence, West Loop Plaintiffs contend that "[t]he testimony of Mr.

8

Krizsan, along with the documents he produced responsive to the subpoena issued to MPP, is evidence that the 57,249 faxes were sent by MPP using the RingCentral account in the name of Merchant Services." [ECF No. 149, at 4.]

NAB also relies on Mr. Krizsan's testimony to argue that it is not clear that the 57,249 faxes identified here were sent by MPP on behalf of NAB. Mr. Krizsan testified that MPP's agents did not work exclusively on behalf of NAB and that MPP's agents had access to and used the 39 different facsimile numbers contained within the RingCentral account on behalf of other companies in addition to NAB. [Dep. of S. Krizsan, 44:18-21; 163:6-10; 164:5-166:21.] He testified that the telephone and facsimile numbers reflected on the documents attached to Plaintiffs' complaint as Exhibits A-B are used by multiple other companies that had access to the RingCentral account and operated under the general name "Merchant Services." [Dep. of S. Krizsan, 65:3-66:4.] Neither Mr. Krizsan nor RingCentral, however, can identify which of the multiple companies operating under the general name "Merchant Services" may have sent any facsimile on the supposed "Class Period" dates. [ECF No. 111-16.] Similarly, RingCentral does not maintain images of what alleged facsimiles were transmitted from any of multiple companies operating under the general name "Merchant Services" which used any of the 39 different fax numbers contained in the RingCentral account. [ECF No. 111-16, at ¶ 3.]

West Loop Plaintiffs and their expert concede that they do not know the content of what was faxed, and by whom, from each of the 39 different facsimile numbers contained in the RingCentral account. [ECF No. 111-11, at 6] ("The RingCentral records do not identify the documents that were faxed."). That, however, does not negate that fact that there is clear evidence of broadcast fax activity during the proposed Class Period from the RingCentral account used by MPP on NAB's behalf. With 57,249 faxes identified in a 23-day Class Period,

9

that is an average of 2,489 faxes sent per day, which is consistent with broadcast fax activity. That volume of fax activity is not consistent with individualized consented transactions because it amounts to roughly one-half minute per fax transmission for a twenty-four hour period.

So, we know that MPP used the RingCentral account, that the fax activity from that account is consistent with broadcast fax activity, and that MPP used the RingCentral account on behalf of NAB. On the dates in question, we also know that MPP sent at least 1,431 faxes per day and that some of the recipients of those faxes returned completed applications to NAB. The transmission of 1,431 faxes per day equates to approximately one minute per transaction which also is not consistent with individually consented to transactions particularly when the NAB application itself is five pages long. West Loop Plaintiffs have identified 23 days on which faxes clearly were sent by MPP on behalf of NAB, and it is reasonable to believe that broadcast fax activity occurred on those days based on the number of fax transmissions on those days. To accept NAB's argument that West Loop Plaintiffs have not shown that MPP sent a sufficient number of faxes on behalf of NAB during the proposed Class Period to merit class treatment of Plaintiffs' claims, we would have to believe that MPP sent less than 40 faxes on behalf of NAB on the 23 days on which we know MPP used the RingCentral account to fax material on NAB's behalf. That is not believable against the background of circumstantial evidence of broadcast fax activity from the RingCentral account used by MPP that West Loop Plaintiffs have developed at this stage of the litigation.

West Loop Plaintiffs do not have to show that all 57,000 faxes were sent on behalf of NAB. They only need to show by a preponderance of the evidence that it is reasonable to believe that a substantial number of those faxes were sent by MPP on behalf of NAB. In the Court's view, West Loop Plaintiffs have met that burden. At minimum, they have shown that the fax

activity from the RingCentral account used by MPP is consistent with broadcast fax activity, that a large number of those faxes likely were sent on NAB's behalf, and that the volume of fax activity undercuts Sandor Krizsan's testimony that MPP only sent faxes in connection with individually consented transactions.[4] To be sure, more work will need to be done to identify the members of the Proposed Class who received unsolicited faxes from MPP on behalf of NAB. As discussed below, however, that can be and often is accomplished in the ordinary course as part of the claims administration process. The need to engage in that level of inquiry as part of the claims process does not diminish West Loop Plaintiffs ability to satisfy the Rule 23 numerosity requirement at this stage of the proceedings.

The Court acknowledges that this is a close call. However, there is clear undisputed evidence that there is broadcast fax activity here and, notwithstanding Mr. Krizsan's generalized testimony that people in foreign countries who he met on Craig's List obtained consent before MPP sent any particular fax transmission, West Loop Plaintiffs say they did not consent to receive any fax transmissions from or on behalf of NAB before they received them. West Loop Plaintiffs' first-hand testimony based on their own personal knowledge outweighs Mr. Krizsan's general, hearsay testimony that also, frankly, is inconsistent with common sense based on the volume of fax activity that Plaintiffs have established. In addition, Mr. Krizsan's vague testimony that other merchant services providers also used the RingCentral account at the same time as MPP used the account for NAB does not undercut the weight of the evidence upon which West Loop Plaintiffs rely.

Based on all of this evidence, the Court is more persuaded than not that a large number of broadcast fax transmissions were sent by MPP on behalf of NAB during the proposed Class

---

[4] Mr. Krizsan testified that he relied on unknown agents in foreign countries who he found on Craig's List to make calls in advance of faxes sent on behalf of NAB. [Dep. of S. Krizsan, 28:11-19; 38:8-41].

11

Period and that number—whether it is in the thousands, as the Court believes the evidence suggests, or only in the hundreds or even dozens—is more than the threshold number typically found to be appropriate for class treatment.

For all of these reasons, the Court concludes that West Loop Plaintiffs have satisfied the numerosity requirement of Rule 23.

### B. Plaintiffs Have Established Commonalty and Typicality

Federal Rule of Civil Procedure 23(a)(2) requires the existence of "questions of law or fact common to the class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Id.* Typicality is closely related to commonality and requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). This means the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana*, 472 F.3d at 514 (quoting *Rosario*, 963 F.2d at 1018).

West Loop Plaintiffs assert that the common questions include: (1) whether Exhibits A-C are advertisements as defined by 47 U.S.C. § 227(a)(5) and 47 C.F.R. § 64.1200(f)(1); (2) whether NAB is liable for the faxes sent by MPP; and (3) whether NAB willfully or knowingly violated the TCPA. West Loop Plaintiffs' proposed class is defined in terms of persons with fax numbers who on the dates comprising the Class Period were sent faxes by or on behalf of NAB, promoting its goods or services for sale. Here, Plaintiffs contend that the common questions can be answered using the same evidence and the same legal analysis, and that those questions apply

equally to all class members. NAB disputes that West Loop Plaintiffs have met their burden to show commonality and typicality.

The Seventh Circuit has recognized that class certification is normal in litigation under 47 U.S.C. § 227. *See Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients.") (citation omitted). In the instant case, typicality is inherent in the Class Definition. By definition, each of the purported class members has been subjected to the same practice as West Loop Plaintiffs, namely all of the purported class members were sent faxes by or on behalf of NAB promoting its goods or services for sale. MPP held itself out as an agent for NAB consistent with NAB's agent agreement [ECF No. 73, NAB 5, at ¶2.7(a).] Also, Exhibits A-C contain NAB's name, address, logo and information about its products and services, including an application for its products and services. Furthermore, NAB purportedly derived financial benefit from the fax transmissions, and the evidence shows that MPP acted consistently with regard to the class and all claims are based on the same legal theory.

NAB argues, to the contrary, that West Loop Plaintiffs' claims are not typical of the claims of other potential class members because West Loop Plaintiffs consented to receive the faxes that were sent to them. However, each of the West Loop Plaintiffs have submitted affidavits that they did not consent to receive the faxes. *See* [ECF No.111-19]. In addition, Plaintiffs' expert Mr. Biggerstaff testified that the number of unsuccessful fax transmissions is not consistent with an attempt to obtain the consent of each recipient, but rather indicative of the use of an old list of fax numbers. [ECF No. 109, at ¶¶ 19, 23, 24, 49.] If consent was obtained, the number of failed transmissions would have been very small, resulting from occasional misdialing or transmission error. That is not the case here.

Courts regularly have found that when, as here, the advertising by fax transmissions is a well-organized, mass advertising tactic and not a sporadic or unorganized practice, consent presents a common issue, rather than an individual one. As a result, class actions for TCPA fax violations often are appropriate. *See, e.g., Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Hinman v. M&M Rental Center, Inc.*, 545 F.Supp.2d 802 (N.D. Ill. 2008); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *Green v. Service Master*, 2009 WL 1810769 (N.D. Ill. June 22, 2009).

For all of these reasons, the Court finds that West Loop Plaintiffs have satisfied the commonality and typicality requirements of Rule 23.

### C. Plaintiffs Are Adequate Class Representatives

Rule 23(a)(4) requires that the named plaintiffs and class counsel "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). On this question, courts look to "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). The adequacy and typicality requirements "tend[ ] to merge." *Amchem Prods., Inc.*, 521 U.S. at 626 n. 20 (internal quotation marks omitted). The Seventh Circuit has concluded, for example, that conflicts of interest can counsel against a finding of adequacy. *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). Also, a class representative with "serious credibility problems . . . may not be an adequate class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

14

NAB does not take issue with the adequacy of class counsel. NAB contends, however, that West Loop Plaintiffs are inadequate class representatives because they allegedly consented to receive the faxes that were sent to them. Therefore, according to NAB, Plaintiffs are not credible or adequate representatives of a class that purportedly did not consent. The Court, however, as discussed above, is not persuaded by NAB's evidence that West Loop Plaintiffs consented to receive the faxes at issue here. NAB has not submitted any credible, non-hearsay evidence that West Loop Plaintiffs consented to receive the faxes whereas West Loop Plaintiffs have submitted affidavits based on their own personal knowledge that they, in fact, did not consent to receive the faxes at issue.

For these reasons, the Court finds that West Loop Plaintiffs are adequate class representatives.

**D. West Loop Plaintiffs Satisfy the "Predominance" Requirement of Federal Rule 23(b)(3)**

Federal Rule 23(b)(3) also requires plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). In applying these standards, the Court focuses on "the substantive elements of plaintiffs' cause of action and inquire[s] into the proof necessary for the various elements." *Simer v. Rios,* 661 F.2d 655, 672 (7th Cir. 1981). Moreover, the Supreme Court has held that "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Amchem Prods., Inc.,* 521 U.S. at 624.

The TCPA provides that it is unlawful to use a telephone facsimile machine, computer or other device to send an advertisement to a telephone facsimile machine, unless the sender obtains the consent of the recipient or has an "established business relationship" with the recipient. 47

U.S.C. § 227. To prevail on a claim under the TCPA, a plaintiff must show that the defendant: "(1) used a telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was unsolicited; and (3) the facsimile constituted an advertisement." *Hinman v. M &M Rental Center, Inc.*, 545 F.Supp.2d 802, 805 (N.D. Ill. 2008). As an affirmative defense, NAB has the burden of proving consent or an existing business relationship. *Thrasher-Lyon v. Ill. Farmers Ins. Co,*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012).

Here, NAB contends that determining whether any particular class member gave consent for the facsimile to be sent would require review of individual records on a number-by-number basis to determine consent. In other words, NAB argues that the Court would be required to engage in a class-member specific inquiry to determine whether each recipient consented to receive the facsimiles at issue. This, according to NAB, would result in individualized questions predominating over common questions of law or fact. The Courts disagrees.

There is a split of opinion in TCPA cases on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification.[5] Judge Kendall concluded in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013):

---

[5] *Compare, e.g., Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318, 326-29 (5th Cir. 2008) (holding that district court abused its discretion in certifying class because the individualized issue of whether "fax advertisements were transmitted without the prior express invitation or permission of each recipient" prevented plaintiff from "advanc[ing] any viable theory employing generalized proof concerning the lack of consent with respect to the class ... [which] leads to the conclusion that myriad mini-trials cannot be avoided."); *G.M. Sign, Inc. v. Brink's Mfg. Co.*, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (St. Eve, J.) (holding that individualized issues of consent predominated over common issues because defendant set forth specific evidence showing large amount of the putative class consented to receive faxes); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D.Wyo. 2011) (holding that because "the TCPA claims will require extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor during the transaction that resulted in the debt owed . . . individual inquiries [ ] predominate over the class action"); *Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (same), with *Balbarin v. North Star*, 2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011) (Bucklo, J.) (denying motion for reconsideration on class certification because the court "tailored the class so that it would capture those individuals whose numbers were obtained through defendant's routine use of third party information providers, but exclude individuals who provided their numbers to either defendant or the original debtor. The possibility that

> The rule that can be extracted . . . is that issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone. However, if the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification.

290 F.R.D. at 107.

Here, West Loop Plaintiffs argue that NAB fails to provide any reliable evidence that it elicited consent from a significant number of purported class members to whom faxes were sent. Again, Sandor Krizsan's testimony is relevant to this issue. As noted above, Mr. Krizsan testified that he relied on unknown agents in foreign countries who he found on Craig's List to make calls in advance of faxes on behalf of NAB. [Dep. of S. Krizsan, 28:11-19; 38:8-41].

West Loop Plaintiffs argue that Mr. Krizsan's testimony about supposed hearsay conversations with unknown and unidentified people in foreign countries is insufficient evidence that consent was obtained or that NAB had an existing business relationship with the recipients of the faxes. The Court agrees. This is the type of vague assertion that Judge Kendall discussed in her analysis. NAB has not offered any specific evidence to show that a significant percentage of the putative class members consented to receive the faxes at issue. Instead, NAB has offered Mr. Krizsan's generalized hearsay testimony and vague assertions about consent being obtained by unidentified individuals in foreign countries. NAB has not offered the type of specific

---

some putative class members might ultimately be found to be outside the class does not preclude class certification."); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2008 WL 3889950, at *6 (N.D. Ill. Aug. 20, 2008) (Kocoras, J.) (rejecting individualized inquiry into consent as a bar to certification because "[s]uch evidence would be within the knowledge of the potential class member, and a party would need a good-faith basis to believe that he or she satisfies the class definition before making a representation to this court to that effect."); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.) (The defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists have perchance consented to receiving the fax.").

17

evidence that would be sufficient to support the conclusion that individualized issues of consent will predominate over common questions of law or fact so as to prevent class certification.

In addition, common sense suggests that a class action is the superior method for the fair and efficient adjudication of this controversy. Given the relatively small amount recoverable by each potential litigant, it is unlikely that any one individual or entity would pursue a claim absent the class action mechanism. Here, "resolution of the issues on a class wide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Hinman v. M & M Rental Center, Inc.*, 545 F.Supp.2d 802, 807 (N.D. Ill. 2008). This is "the quintessential dispute that will, as a practical matter, proceed only if it receives class treatment." *Brodsky v. Humana Dental Insurance Co.*, 2016 WL 5476233, at *12 (N.D. Ill. Sept. 29, 2016).

For all of these reasons, the Court concludes that West Loop Plaintiffs have satisfied the superiority and predominance requirements of Rule 23(b)(3).

### E. The Class Is Sufficiently Ascertainable At This Time

In addition to the four requirements enumerated in Federal Rule 23(a), courts consistently have considered a fifth, implied requirement—that membership in the class be sufficiently definite or ascertainable. *See Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) ("[A] class must be sufficiently definite that its members are ascertainable."); *Oshana*, 472 F.3d at 513 (7th Cir. 2006) (plaintiff must show "that the class is indeed identifiable as a class" in addition to showing numerosity, commonality, typicality, and adequacy of representation plus one of the conditions of Rule 23(b)). As a court in this district has pointed out, the court, however, need not ascertain "absent class members' actual identities . . . before a class can be certified." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012).

18

Rather, "[i]t is enough that the class be ascertainable" with class members to be identified during a claims administration process if the class prevails. *Id.*

More recently, some courts have raised the bar for class actions under Rule 23(b)(3) by requiring a higher standard of ascertainability. *See Byrd v. Aaron's Inc.*, 784 F. 3d 154, 168 (3rd Cir. 2015). In *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), however, the Seventh Circuit rejected a heightened requirement of ascertainability and concluded that "[n]othing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3), which has the effect of skewing the balance that district court must strike when deciding to certify classes." 795 F.3d at 658. When balancing the interests, a court must consider "the likely difficulties in managing a class action," but in doing so it must balance countervailing interests to decide whether a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* FED. R. CIV. P. 23(b)(3).

In *Mullins*, the Seventh Circuit concluded that a class composed of a particular group of individuals who were harmed in a particular way during a specific period in particular areas satisfied the ascertainability requirement even though at that stage in the litigation the individuals' identities were not known. 795 F.3d at 660-61. The Seventh Circuit refused to reverse the district court's order certifying the class because the plaintiff proposed that class members would self-identify by affidavit during the claims process. *Id.* The Seventh Circuit concluded that the district court did not abuse its discretion "by deferring until later in the litigation decisions about more detailed aspects of ascertainability and the management of any claims process." *Id.* As such, the Seventh Circuit implicitly endorsed the approach taken by the lower court in *Mullins* that permitted potential class members to self-identify through an

19

affidavit, which is particularly important in a small claims case that would not otherwise be litigated on an individual basis.

There is clear evidence in this case of broadcast fax activity on the specific dates identified by West Loop Plaintiffs, and Plaintiffs propose something similar here to the approach taken in *Mullins*—a class notice and claims process in which potential class members would confirm that they did, in fact, receive a fax from MPP on behalf of NAB and that they did not consent to receive such a transmission. For the reasons endorsed by the Seventh Circuit in *Mullins*, this Court believes that is a sensible approach in this case.

For all of these reasons, the Court finds that the class proposed by West Loop Plaintiffs is sufficiently ascertainable at this stage of the litigation and recommends that the class be certified.

### IV. CONCLUSION

For all of the reasons discussed in the Court's report and recommendation, the Court concludes that West Loop Plaintiffs have shown by a preponderance of the evidence that they satisfy the requirements of class certification. Accordingly, the Court recommends that Plaintiffs' Amended Motion for Class Certification [ECF No. 98] be granted.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. *See* FED. R. CIV. P. 72. Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 16, 2018