IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEST LOOP CHIROPRACTIC )<br>& SPORTS INJURY CENTER, LTD., and )<br>WEST LOOP HEALTH & SPORTS )<br>PERFORMANCE CENTER, LLC, on behalf )<br>of plaintiffs and the class members )<br>defined herein, )<br>    )<br>    Plaintiffs, )<br>    )<br>    v. )<br>    )<br>NORTH AMERICAN BANCARD, LLC, )<br>and JOHN DOES 1-10, )<br>    )<br>    Defendants. ) | No. 16 C 5856<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Defendant, North American Bancard, LLC ("NAB"), filed objections to Magistrate Judge Gilbert's Report and Recommendation of May 16, 2018, in which Judge Gilbert recommended that plaintiffs' amended motion for class certification be granted. For the reasons explained below, the Court overrules defendant's objections, adopts the Report and Recommendation in full [158], and grants plaintiffs' amended motion for class certification [98].

## BACKGROUND

This is a "junk fax" case. After allegedly having received unsolicited facsimile advertisements for NAB's goods and services,[1] plaintiffs West Loop Chiropractic & Sports Injury Center, Ltd. ("West Loop Chiropractic") and West Loop Health & Sports Performance Center, LLC brought this putative class action against NAB for violation of the Telephone

---

[1] NAB provides merchants with equipment and services to process credit-card transactions. (ECF No. 101, Dep. of Ryan Malloy at 8.)

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Under Federal Rule of Civil Procedure 23, plaintiffs move for certification of a class of "[a]ll persons with fax numbers, who during the Class Period, were sent faxes by or on behalf of defendant [NAB] promoting its goods or services for sale."[2] (ECF No. 98, Pls.' Am. Mot. Class Certification at 1.) The "Class Period" is defined as April 6, 8, 12, 18, 20, 25, 26, 27, and 28; May 4, 9, 12, 20, 25, and 26; June 8 and 23; and August 4, 8, 9, 10, 11, 12, 18, and 23, 2016. (*Id.*)

After the Court referred plaintiffs' amended motion to Magistrate Judge Gilbert, Judge Gilbert issued a Report and Recommendation recommending that this Court grant the motion. NAB filed objections to the Report and Recommendation pursuant to Federal Rule of Civil Procedure 72.

## DISCUSSION

A.  **Legal Standards**

1.  **Standard of Review**

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with

---

[2]Judge Gilbert noted in his Report and Recommendation: "Plaintiffs do not specify in their class definition that they seek to certify a class comprised of class members who received <u>unsolicited facsimiles</u> by or on behalf of NAB advertising or promoting its goods and services. However, the case is about whether [third party Merchant Payment Processing, Inc.] sent faxes on behalf of NAB to individuals or entities that did not consent to receive such faxes, and it appears that West Loop Plaintiffs intend that only those individuals and entities will share in an eventual class settlement or recovery." (ECF No. 158, R. & R. at 5.) This Court likewise sees no problem with plaintiffs' class definition. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *2 (N.D. Ill. May 27, 2008) ("While we acknowledge that a fax must be 'unsolicited' in order to recover under the TCPA, there is no requirement in Rule 23 that Plaintiff's class must be defined in terms of the statute allegedly violated."). Moreover, the definition avoids any argument that plaintiffs have fashioned a "fail-safe" proposed class.

respect to any contested matter." *Kanter v. C.I.R.*, 590 F.3d 410, 416 (7th Cir. 2009) (quoting 28 U.S.C. § 636(b)(1)). The Court of Appeals has observed:

> *De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge . . . while still engaging in an independent decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The district judge makes the ultimate decision to adopt, reject, or modify the recommended disposition. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009); Fed. R. Civ. P. 72(b)(3). When no objection is made to a portion of a report and recommendation, the district court reviews the unobjected portion for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

### 2. Class-Action Standards

To be certified, a proposed class must satisfy each requirement of Rule 23(a) as well as one of the three requirements of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Rule 23(a) requirements are numerosity, typicality, commonality, and adequacy of representation. *Id.* After those four requirements are satisfied, proponents of the class seeking certification under Rule 23(b)(3)—the provision on which plaintiffs rely here—must also show that (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) a class action is superior to other available methods of resolving the dispute. *Id.* Plaintiffs bear the burden of showing by a preponderance of the evidence that their proposed class satisfies the Rule 23 requirements. *See id.*

B.   Analysis

After reviewing the facts of this case, Judge Gilbert discussed the requirements of Rule 23, determined that plaintiffs have satisfied all of them, and recommended that this Court certify the proposed class.  NAB raises several objections to the Report and Recommendation.

   1.   **Objection #1 - Numerosity**

NAB first argues that Judge Gilbert erred by concluding that plaintiffs have satisfied the numerosity requirement.  To meet the numerosity requirement, plaintiffs must establish that the class is so numerous that joinder is impracticable.  Fed. R. Civ. P. 23(a); *see also Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir.) (a forty-member class is often regarded as sufficient to meet the numerosity requirement), *cert. denied sub nom. Mulvania v. Rock Island Cty. Sheriff*, 138 S. Ct. 361 (2017).

In support of their motion for class certification, plaintiffs submit two facsimile transmissions that they received regarding NAB's goods and services, as well as one facsimile transmission that was received by INSPE Associates, Ltd. ("INSPE"), a non-party.  (ECF Nos. 110-1, 110-2, & 110-3.)  Plaintiffs allege that these faxes were unsolicited and sent on NAB's behalf by a third party, Merchant Payment Processing, Inc. ("MPP"), which had an agreement

with NAB to market NAB's goods and services and used fax advertising to do so.[3] The faxes state that they are from "North American BANCARD Merchant Services," offer the use of credit-card processing equipment, and contain a "Merchant Processing Application," along with instructions on how to complete and return the application in order to obtain the equipment. (*Id.*) Plaintiffs also submit 23 applications that various fax recipients completed and returned to MPP, which sent them to NAB. (ECF No. 110-5.) The dates in the Class Period correspond to the dates shown in the fax transmission headers from "Merchant Services" (a name under which MPP does business and which it used in its faxing activity) on plaintiffs' faxes and the returned applications. Additionally, plaintiffs rely on MPP's outbound fax call logs, which were produced by RingCentral, an entity that provided telecommunications services for MPP. Plaintiffs cross-referenced the merchants' fax numbers that appear on the returned applications with the RingCentral records for the dates shown on the applications.

Among the faxes identified in the RingCentral logs are 57,249 faxes that plaintiffs say were potentially sent by MPP on behalf of NAB during the Class Period. To support their claim that MPP sent a sufficient number of faxes on NAB's behalf on these dates, and that the faxes

---

[3]The agreement was signed on MPP's behalf by Kent Harper, and Harper's name appears on several of the documents produced in discovery. MPP was created and controlled, however, by Sandor Krizsan, who testified at his deposition that Harper was his "silent partner." (ECF No. 104, Dep. of Sandor Krizsan at 19, 30.) When asked why he partnered with Harper, Krizsan stated: "[A]s far as I recall at that time, [Harper] was already interested in the merchant services . . . . I was in contact with him . . . and I just had this idea, we could partner up." (*Id.* at 168.) Krizsan confirmed that Harper did not do any work for MPP and that "that was the agreement, that he would not really do anything." (*Id.*) When asked why, then, Krizsan had paid Harper through an entity that controlled MPP if Harper was not providing MPP with any services, Krizsan replied: "I don't know. That's the thing, you guys are too technical about this thing. I'm just a simple guy. I had this idea." (*Id.* at 169.) When counsel stated that she was simply trying to ascertain why Krizsan paid Harper, Krizsan responded: "I don't know. I can pay anybody. That's legal. That's how the agreement was set up. It's just an agreement." (*Id.* at 170.)

advertised NAB's goods and services, plaintiffs rely on the testimony of their retained expert, Robert Biggerstaff, a "retired engineer with experience in designing databases and computer-based fax programs," who is "an expert in TCPA class actions involving junk faxes." (ECF No. 158, R. & R. at 6 n.3.)[4] Biggerstaff reviewed the RingCentral records of MPP's fax transmissions that were produced in discovery.

Biggerstaff states in his report that he reviewed the RingCentral outbound fax-transmission data for the dates identified by plaintiffs' counsel, as well as the same type of data for the period of December 19, 2012 to August 21, 2016.[5] Biggerstaff determined that during the Class Period as it was defined at the time of his report, there were 62,465[6] "fully-received error free transmissions"; the transmission data are "strongly consistent with fax 'broadcasting' activity where a template fax image is sent to a list of fax destinations," and a specimen fax template image would be representative of all the fax transmissions in that broadcast; and the distribution of "result codes" for the fax calls, in particular the high percentage of the result "no fax machine," is strongly consistent with bulk fax transmissions of the same template being made to an aged list of fax numbers, as opposed to a list of fax numbers that was generated by having recently obtained the numbers directly from their users. (ECF No. 110-13, Expert Report of Robert Biggerstaff at 4, 6-8.)

---

[4]NAB does not challenge Biggerstaff's qualifications or the admissibility of his report.

[5]MPP entered into its agreement to market NAB's goods and services on March 3, 2016. (ECF No. 73.)

[6]Plaintiffs later revised the Class Period to remove two days, which reduced this number to 57,249. (ECF No. 134, Pls.' Reply at 1 n.1.)

Judge Gilbert credited Biggerstaff's opinion that the data he reviewed is consistent with fax-broadcasting activity, and he stated that Biggerstaff's "logical path to that conclusion is clear," evidence-based, and sound. (R. & R. at 7.) Judge Gilbert further stated that Biggerstaff's analysis "strongly suggests there were bulk transmissions of the same fax template made to a list of fax numbers rather than separate and individual fax transmissions sent in response to consent received from individual fax recipients as NAB suggests." (*Id.*) Judge Gilbert found that it is a closer question whether plaintiffs have shown by a preponderance of the evidence that MPP sent the bulk transmissions on behalf of NAB. In addition to Biggerstaff's report, the RingCentral records, and the faxes, plaintiffs rely on the testimony of Sandor Krizsan, MPP's principal, who testified at his deposition that he created the cover sheet that appears in plaintiffs' faxes and submitted a sample to NAB prior to the time the faxes were sent. Krizsan also testified that the phone numbers that appear on the fax transmissions submitted by plaintiffs are RingCentral telephone and fax numbers that are used by MPP. Ultimately, Judge Gilbert concluded that plaintiffs have shown by a preponderance of the evidence that MPP sent a large number of broadcast fax transmissions on behalf of NAB during the proposed Class Period, reasoning as follows:

> [W]e know that MPP used the RingCentral account, that the fax activity from that account is consistent with broadcast fax activity, and that MPP used the RingCentral account on behalf of NAB. On the dates in question, we also know that MPP sent at least 1,431 faxes per day and that some of the recipients of those faxes returned completed applications to NAB. The transmission of 1,431 faxes per day equates to approximately one minute per transaction which also is not consistent with individually consented to transactions particularly when the NAB application itself is five pages long. West Loop Plaintiffs have identified 23 days on which faxes clearly were sent by MPP on behalf of NAB, and it is reasonable to believe that broadcast fax activity occurred on those days based on the number of fax transmissions on those days. To accept NAB's argument that West Loop Plaintiffs have not shown that MPP sent a sufficient number of faxes on behalf of NAB during the proposed Class Period to merit class treatment of Plaintiffs'

> claims, we would have to believe that MPP sent less than 40 faxes on behalf of NAB on the 23 days on which we know MPP used the RingCentral account to fax material on NAB's behalf. That is not believable against the background of circumstantial evidence of broadcast fax activity from the RingCentral account used by MPP that West Loop Plaintiffs have developed at this stage of the litigation.
> . . .
> [T]here is clear undisputed evidence that there is broadcast fax activity here and, notwithstanding Mr. Krizsan's generalized testimony that people in foreign countries who he met on Craig's List obtained consent before MPP sent any particular fax transmission, West Loop Plaintiffs say they did not consent to receive any fax transmissions from or on behalf of NAB before they received them. West Loop Plaintiffs' first-hand testimony based on their own personal knowledge outweighs Mr. Krizsan's general, hearsay testimony that also, frankly, is inconsistent with common sense based on the volume of fax activity that Plaintiffs have established. In addition, Mr. Krizsan's vague testimony that other merchant services providers also used the RingCentral account at the same time as MPP used the account for NAB does not undercut the weight of the evidence upon which West Loop Plaintiffs rely.

(R. & R. at 10-11.)

This Court agrees with Judge Gilbert's well-reasoned analysis and his conclusion that plaintiffs have demonstrated numerosity. As Judge Gilbert observed, plaintiffs "do not have to show that all 57,000 faxes were sent on behalf of NAB. They only need to show by a preponderance of the evidence that it is reasonable to believe that a substantial number of those faxes were sent by MPP on behalf of NAB." (R. & R. at 10.) Plaintiffs have made this showing. NAB argues that Judge Gilbert erred because he did not properly consider "the relationship, if any, between NAB and any of the 39 different fax numbers registered to 'Merchant Services'"; MPP's faxing activity that predated and postdated its relationship with NAB; the fact that the "to" boxes of the fax cover sheets to plaintiffs and INSPE contained the names "Jessica" and "Gabby" along with the entity's name; the fact that the RingCentral records indicate that plaintiffs and INSPE received brief telephone calls from a number associated with the RingCentral account before the fax transmissions were sent; and the fact that MPP produced in

discovery four fax cover sheets it used with regard to NAB marketing, three of which are different from the fax cover sheets plaintiffs allegedly received. (ECF No. 164, Def.'s Objs. at 2, 9-12.)

NAB's arguments are little more than red herrings; the evidence it cites does little to controvert plaintiffs' evidence. The number of fax numbers used by MPP (which, Krizsan testified, does business under the name "Merchant Services") in its RingCentral account is evidence of fax-broadcasting activity, not occasional faxing in response to personal contact. NAB contends that the RingCentral account could have been used by MPP's agents to work for other entities besides MPP, and contends that MPP used its accounts to transmit faxes for entities other than NAB, but NAB cites only Krizsan's vague hearsay testimony in support of this

argument, and that testimony is sketchy at best.[7] As Judge Gilbert noted, Krizsan does not identify any other company that may have sent faxes using MPP's RingCentral account or on whose behalf MPP may have sent a fax on the dates in the Class Period. And, given Biggerstaff's conclusion that that there is a strong indication that MPP was using a fax-broadcasting template on the dates it sent faxes on behalf of NAB, neither MPP's activity that predated and postdated its relationship with NAB nor its alternative versions of cover sheets are

---

[7]Krizsan testified that his "independent agents" in foreign countries obtained business owners' phone numbers from the Yellow Pages or superpages.com and "cold called" those businesses to tell them about NAB's services and offer to send them more information, using a script he sent to the agents. (ECF No. 104, Dep. of Sandor Krizsan at 15-16, 39-40, 51-52.) Krizsan could not produce a copy of the script; he stated that he "Skyped" it to the agents. (*Id.* at 51-52.) He was unable to state how the agents went about searching superpages.com or what search instructions, if any, he provided to them. (*Id.* at 41-42.) According to Krizsan, the agent would ask the business for its fax number and then fax the merchant application form after the conversation. (*Id.* at 40.) The fax cover sheets that plaintiffs and INSPE received purport to be from "Evelyn Thompson, Account Manager." (ECF Nos. 110-1, 110-2, 110-3.) Krizsan was asked where Evelyn Thompson is located. He replied, "In Philippines." (Krizsan Dep. at 38.) When asked where in the Philippines, Krizsan replied: "I don't know. I mean, I've never met them, I never—I just basically got their—Skype them, put an ad in Craig's List and I never ask. I just talk to them over Skype. I was happy just to have someone to do these things, you know, to make the calls and give them the instructions what to do and then they started making the calls and doing—following these steps that were outlined for them." (*Id.*) When Krizsan was asked where another purported agent, "Mary" is located, he replied: "Same thing. I wouldn't know any of these agents where they're located. I never—there's so many details, so many things going back and forth, I don't even remember—I wouldn't even remember if I hired them yesterday, because I don't—I don't look through where they are. I don't really care. I don't remember names too much either. I don't have that memory. That's not important to me. So I don't remember." (*Id.* at 39.)

Krizsan was also asked whether the foreign agents were making calls for entities other than MPP. He replied that it was "possible" and that he didn't "know what they were doing with" the RingCentral account, to which they had access. (*Id.* at 45-46.) Later in his deposition, Krizsan stated that not only did he permit the agents to use the RingCentral account, they had asked him if they could use the account for work for other businesses, and he allowed them to do so, as "kind of like a gift so they will be more likely to work with me long term." (*Id.* at 165-66.) Then, when asked whether it was a fair statement that the agents had used the RingCentral numbers for business purposes not related to MPP, Krizsan then replied that sometimes he "told them" to do that. (*Id.* at 166.)

NAB asserts that this Court is allowed to consider hearsay statements at the certification stage. It does not cite precedential authority to that effect. Even if it is permitted to consider hearsay at this stage, the Court declines to do so with respect to Krizsan's testimony.

of much significance. The "personalized" (to use NAB's characterization) nature of the fax cover sheets to plaintiffs and INSPE does not go very far in establishing that plaintiffs' employees[8] gave prior express permission[9] to send the faxes, nor does the fact that plaintiffs received voice calls from a RingCentral telephone number at some point prior to receiving the NAB faxes. There is no competent evidence regarding the content of those calls. Plaintiffs deny that they provided consent, and they submit evidence that the INSPE fax bears a preprinted office address for INSPE that was outdated by three years, which they say shows that its contact information was obtained from a dated list and not a recent telephone conversation.

NAB also asserts that the Report and Recommendation "relies on Plaintiff's baseless argument that an outbound fax transmission duration of approximately 5 minutes is indicative of a 5 page fax." (Def.'s Objs. at 10-11.) NAB is incorrect. The Report and Recommendation does not rely on any such argument or reasoning.[10] Judge Gilbert did reason that the number of faxes sent during the Class Period equates to approximately one or one-half minute per transmission, which is not consistent with individualized transactions with consent. (R. & R. at 9-10.) This Court agrees.

---

[8]There is evidence that West Loop Chiropractic has an employee named Jessica. There does not appear to be similar evidence regarding anyone named Gabby at INSPE.

[9]NAB has the burden of proving the affirmative defense of prior express invitation or permission. *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 721 (N.D. Ill. 2016).

[10]In conjunction with its argument regarding the duration of fax transmissions, NAB submits a Declaration of Lawren A. Zann (its counsel), which it did not previously submit along with its briefs or to Judge Gilbert. Even though the Court's review is *de novo*, the Court declines to consider the Declaration. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("[T]here are good reasons for the rule that district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases governed by 28 U.S.C. § 636(b)(1) is *de novo*.").

NAB's Objection #1 is overruled.

2.     **Objection #2 - Commonality and Typicality**

The requirement of Rule 23(a) that there exist questions of law or fact common to the class may be satisfied by showing even one significant issue that is capable of classwide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (for purposes of Rule 23(a)(2), "even a single common question will do") (internal punctuation omitted). Typicality and commonality are closely related, and a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted).

Judge Gilbert concluded that plaintiffs have satisfied these requirements because each of the putative class members has been subjected to the same practice as the plaintiffs, namely, was sent a fax on NAB's behalf that promoted NAB's goods and services, and common questions in similar TCPA cases include whether a given fax is an advertisement under the statute. The Court agrees. Plaintiffs have submitted evidence that they did not consent to receive the NAB faxes, as well as evidence that the faxing activity was broadcasting—mass advertising—which "lends itself to a common adjudication of the consent issue." *Clearbrook v. Rooflifters, LLC*, No. 08 C 3276, 2010 WL 2635781, at *3 (N.D. Ill. June 28, 2010).

NAB maintains that plaintiffs' claims are atypical of the class because there is evidence of their consent in that phone calls were made to plaintiffs before the faxes were sent and the fax cover sheets bore first names. These arguments are rejected for the reasons discussed above. NAB also argues that there is evidence that the fax recipients who returned merchant applications "invited and permitted MPP" to fax them the applications. The Court is

unpersuaded; NAB relies only on Krizsan's hearsay, generalized testimony, which does not establish plaintiffs' consent. And the fact that some fax recipients were interested in NAB's goods and services does not mean that they gave prior express permission to send an initial fax in the first place. The Court is likewise unpersuaded by NAB's contention that Judge Gilbert relied on unsupported assumptions and speculation that all putative class members received the same fax from NAB. Judge Gilbert properly relied on the analysis of Biggerstaff, who concluded that the pattern of fax transmissions is consistent with fax-broadcasting activity with a template image.

The Court overrules NAB's Objection #2.

### 3. Objection #3 - Adequacy

NAB objects to the conclusion that plaintiffs can serve as adequate representatives, on the ground that the consent defense applies to them. NAB argues that the Report and Recommendation "shows a failure to consider the unbiased, independent evidence of Plaintiffs' consent to receive" the faxes at issue, and it suggests that plaintiffs have a credibility problem because their claim is "manufactured." (Def.'s Objs. at 15.) NAB again cites the "personalized" cover sheets and the RingCentral records of voice calls, which, the Court has explained, do not establish prior express invitation or permission. The Court finds that plaintiffs are adequate class representatives and accordingly overrules Objection #3.

### 4. Objection #4 - Predominance

Under Rule 23(b)(3), the predominance provision, "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members." NAB asserts that individualized inquiries predominate here. It relies on the same arguments it advances with regard to the other requirements for class certification, which the Court has

13

rejected. The Court agrees with Judge Gilbert's determination that because NAB offers only vague assertions and not specific evidence to show that a significant percentage of the putative class members consented to receive the NAB faxes, there is no basis to conclude that individualized issues of consent will predominate over common questions.

After *de novo* review of plaintiffs' motion for class certification, the filings submitted with respect to the motion, the Report and Recommendation, the Objections, and the materials filed with respect to the Objections, the Court determines that the Report and Recommendation was correct in all respects.

## CONCLUSION

The Court overrules defendant's objections and adopts the Report and Recommendation [158] in full. The Court grants plaintiffs' amended motion for class certification [98]. A status hearing is set for August 21, 2018, at 9:30 a.m. to discuss the next steps in the case.

**DATE**: August 7, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**